[Cite as *Royse v. Dayton*, 195 Ohio App.3d 81, 2011-Ohio-3509.]

IN THE COURT OF APPEALS OF MONTGOMERY COUNTY, OHIO

ROYSE,

     Appellant, : C.A. CASE NO. 24172

v. : T.C. CASE NO. 2008 CV 8296

     : (Civil Appeal from
CITY OF DAYTON et al.,      Common Pleas Court)
     Appellees. :

. . . . . . . .

O P I N I O N

Rendered on the 15th day of July, 2011.

. . . . . . . .

Terry W. Posey, for appellant.

John J. Danish, Dayton Law Director, and Norma M. Dickens, and Jonathan W. Croft, Assistant City Attorneys, for appellee.

. . . . . . . .

GRADY, Presiding Judge.

{¶ 1} Plaintiff, Ronald Royse, appeals from an order of the court of common pleas affirming the decision of the Civil Service Board of the city of Dayton.

{¶ 2} Royse was employed by the Dayton Fire Department for 14 years. On May 14, 2007, he submitted to a random drug screen pursuant to the collective-bargaining agreement between the city of Dayton and the International Association of Firefighters, Local

136 AFC–CIO. The test results were positive for cocaine. Pursuant to the collective-bargaining agreement, Royse then was evaluated by a substance-abuse professional and completed a drug-and-alcohol-education program. On May 31, 2007, Royse was subjected to a return-to-duty drug screen, which was negative. Royse then returned to work with the Dayton fire department.

{¶ 3} As a result of his May 14, 2007 positive drug test, Royse was scheduled to submit to eight follow-up, random drug screenings after his return to work. His first two follow-up tests were negative, but his November 16, 2007 follow-up test result was positive for cocaine. Following a predisciplinary hearing, the city of Dayton discharged Royse from his employment with the Dayton fire department.

{¶ 4} Royse appealed his termination to the board. At the hearing before the board, two witnesses, Ken Thomas and Maurice Evans, testified on behalf of the city of Dayton. They described the process that takes place when a firefighter is submitted to a random drug test. Evans and an employee of Concentra Medical Center collect the urine samples from the firefighter being tested. The samples are sealed and shipped to ATN, a laboratory in Memphis, Tennessee. ATN performs tests on the samples to determine whether the samples contain drugs. ATN then sends the results of the tests to Alternative Safety and Testing Solutions ("ASTS"),

a company in Michigan.  A medical-review officer employed by ASTS then reviews the results produced by ATN to determine whether the test results are positive or negative for the presence of marijuana, cocaine, amphetamines, opiates, or PCP.  If the medical-review officer interprets the results of ATN's study to be positive for any of these five substances, the medical-review officer attempts to contact the employee.  Finally, ASTS sends the medical-review officer's positive-test report to Ken Thomas, the safety administrator for the city of Dayton.

{¶ 5} At the hearing before the board, the city of Dayton submitted copies of the medical-review officer's two reports that found that Royse's urine samples tested positive for cocaine on May 14, 2007, and November 16, 2007.  No person testified regarding the methodology of the tests performed by ATN or the results of the tests that ATN forwarded to ASTS.  Further, no person testified on behalf of ASTS regarding what particular data the medical-review officer reviewed or why the officer concluded that Royse's test results were positive for cocaine.

{¶ 6} Royse objected to the admission of the medical-review officer's positive reports based on tests performed by ATN as inadmissible hearsay.  The board overruled the objection and affirmed Royse's discharge on August 21, 2008.  Royse filed a notice of appeal from the board's decision in the court of common

pleas pursuant to R.C. Chapter 2506. On July 6, 2010, the court affirmed the board's decision. Royse filed a notice of appeal.

FIRST ASSIGNMENT OF ERROR

{¶ 7} "The trial court erred in applying a deferential standard of review instead of conducting a trial de novo."

{¶ 8} Royse argues that the trial court applied an incorrect, deferential standard of review in reviewing the board's decision. According to Royse, the trial court should have conducted a de novo review of the board's decision instead of giving the board deference on evidentiary and credibility issues. Royse's argument relies on R.C. 124.34(C), which provides for an appeal "on questions of law and fact."

{¶ 9} "[A] member of a fire or police department may utilize either of two distinct avenues of appeal to the court of common pleas from a decision of suspension, demotion or removal from office by a municipal civil service commission. First, if an appeal is brought on questions of law and fact under [R.C. 124.34,] * * * the procedure on appeal is governed by the Appellate Procedure Act. In such a case, the trial court is required to conduct a de novo review of the civil service proceedings. The court may conduct an independent judicial examination and determination of conflicting issues of fact and law. The court may, in its discretion, hear additional evidence, and may substitute its

judgment for that of the commission. Second, if an appeal to the court is brought pursuant to [R.C. Chapter 2506], * * * the court is required to allow additional evidence only in the circumstances enumerated in the statute, and the court must give due deference to the administrative resolution of evidentiary conflicts." (Footnotes omitted.) 15 Ohio Jurisprudence 3d (2006) 698, Civil Servants, Section 605. See *Resek v. Seven Hills* (1983), 9 Ohio App.3d 224; *Giannini v. Fairview Park* (1995), 107 Ohio App.3d 620.

{¶ 10} Royse did not identify in his notice of appeal from the board's decision which statutory avenue of appeal he invoked. In his brief filed with the court of common pleas, however, Royse identified R.C. Chapter 2506 as providing the proper standard of review. Further, he noted in a motion to strike that this case was an administrative appeal brought pursuant to R.C. 2506.04. Finally, in his reply brief submitted to the trial court, Royse reiterated the standard used by trial courts when conducting a review pursuant to R.C. Chapter 2506. At no point did Royse mention R.C. 124.34 to the trial court or that he desired a trial de novo.

{¶ 11} The doctrine of invited error estops an appellant, in either a civil or criminal case, from attacking a judgment for errors the appellant induced the court to commit. Under that principle, a party cannot complain of any action taken or ruling made by the court in accordance with the party's own suggestion

or request.  *State v. Woodruff* (1983), 10 Ohio App.3d 326.

{¶ 12} Royse induced the court to apply the R.C. Chapter 2506.04 standard of review the court applied.  Royse may not now argue that in doing so, the court erred in not applying the R.C. 124.34 standard instead.

{¶ 13} When reviewing an administrative appeal pursuant to R.C. 2506.04, the trial court considers the "whole record," including any new or additional evidence admitted under R.C. 2506.03, and determines whether the administrative order is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence.  *Henley v. Youngstown Bd. of Zoning Appeals* (2000), 90 Ohio St.3d 142, 147.  The trial court correctly applied that standard of review to Royse's appeal from the board's decision.

{¶ 14} The first assignment of error is overruled.

SECOND ASSIGNMENT OF ERROR

{¶ 15} "The trial court erred in considering the evidence of the drug tests as a matter of evidence and of law."

{¶ 16} The standard of review to be applied by an appellate court in an R.C. 2506.04 appeal is "more limited in scope" than the standard of review applied by the common pleas court to the board's decision.  *Henley*, 90 Ohio St.3d at 147, quoting *Kisil v. Sandusky* (1984), 12 Ohio St.3d 30, 34.  In *Henley,* the Ohio

Supreme Court explained:

{¶ 17} " '[R.C. 2506.04] grants a more limited power to the court of appeals to review the judgment of the common pleas court only on "questions of law," which does not include the same extensive power to weigh "the preponderance of substantial, reliable, and probative evidence," as is granted to the common pleas court.' * * * Appellate courts must not substitute their judgment for those of an administrative agency or a trial court absent the approved criteria for doing so."  Id. at 147, quoting *Lorain City School Dist. Bd. of Edn. v. State Emp. Relations Bd.* (1988), 40 Ohio St.3d 257, 261.  A "question of law" is "'[a]n issue to be decided by the judge, concerning the application or interpretation of the law.'" *Henley* at 148, quoting Black's Law Dictionary (7th Ed.1999) 1260.

{¶ 18} The trial court found that the testimony of the city of Dayton's two witnesses and documentary evidence of Royse's drug-test records were competent and probative evidence that supported the board's decision.  Royse argues that the trial court erred in affirming the board's decision because the primary evidence on which the board relied, the report of a medical-review officer who had reviewed the results of drug tests that the officer concluded were positive for drugs, was inadmissible hearsay evidence under the Ohio Rules of Evidence and the board's own rules

and regulations.

{¶ 19} "As a general rule, even apart from specific statutes, administrative agencies are not bound by the strict rules of evidence applied in court. * * * However, an administrative agency should not act upon evidence which is not admissible, competent, or probative of the facts which it is to determine. * * * The hearsay rule is relaxed in administrative proceedings, but the discretion to consider hearsay evidence cannot be exercised in an arbitrary manner." *Haley v. Ohio State Dental Bd.* (1982), 7 Ohio App.3d 1, 6.

{¶ 20} Dayton Civil Service Board Rules and Regulations 14.5(A) provides that "[t]he admission of evidence shall be governed by the rules applied by the Courts of Ohio in civil cases." Therefore, while the application of the rules of evidence may be somewhat relaxed in administrative proceedings, the board itself chose to adopt a rule that requires it to apply the fundamentals of the rules of evidence in its proceedings.

{¶ 21} Dayton Civil Service Board Rules and Regulations 14.5(D) provides that "[t]he Board or Hearing Officer conducting a hearing shall have full authority to control the procedure of the hearing, to admit or exclude testimony or other evidence, to rule upon all objections, and take such other actions as are necessary and proper for the conduct of such hearing. * * *" This rule explains the

authority of the board to control its hearings, but does not give the board authority to ignore its rule, or the well-established precedent that "the discretion to consider hearsay evidence cannot be exercised in an arbitrary manner." *Haley*, 7 Ohio App.3d at 6.

{¶ 22} It is undisputed that the documents concerning Royse's drug test that were submitted by the city of Dayton to the board were hearsay in that they were offered to prove the truth of the matter asserted. Evid.R. 801(C). Generally, hearsay evidence is inadmissible unless it fits within an exception to the hearsay rule. Evid.R. 802, 803, 804. The trial court found that the drug-test records qualified as an exception to the hearsay rule under the "business records" exception in Evid.R. 803(6). That exception provides:

{¶ 23} "Records of regularly conducted activity. A memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness or as provided by Rule 901(B)(10), unless the source of information or the method or

circumstances of preparation indicate lack of trustworthiness."

{¶ 24} Royse provided urine samples to Concentra Medical Center, which then shipped the samples to ATN, a company in Memphis, Tennessee. ATN tested the urine samples for the presence of five different substances. ATN then forwarded the test results to a medical-review officer in Michigan. The medical-review officer reviewed the test results and determined that two of Royse's tests were positive. The medical-review officer's report of his findings was then provided by him to the city of Dayton, which relied on the report to terminate Royse and to demonstrate the cause of his termination in the proceedings before the board.

{¶ 25} "To be admissible under Evid.R. 803(6), a business record must display four essential elements: (1) it must have been kept in the regular course of business; (2) it must stem from a source who had personal knowledge of the acts, events, or conditions; (3) it must have been recorded at or near the time of the transaction; and (4) a foundation must be established by the testimony of either the custodian of the record or some other qualified person." *State v. Comstock* (Aug. 29, 1997), Ashtabula App. No. 96-A-0058.

{¶ 26} The medical-review officer's reports were produced as part of his work for his employer, ASTS, which supplied the report to the city of Dayton. "The information in reports that a business

receives from outside sources is not part of its business records for the purposes of Evid.R. 803(6)." *Babb v. Ford Motor Co.* (1987), 41 Ohio App.3d 174, 177. See also *State v. Jackson*, Ashtabula App. No. 2007-A-0079, 2008-Ohio-6976, at ¶ 32. Therefore, the city of Dayton cannot establish that the medical-review officer's records were its own business records admissible under Evid.R. 803(6). The trial court erred in finding the business-records exception satisfied.

{¶ 27} Authentication, which is evidence sufficient to support a finding that the matter in question, including documentary evidence, is what its proponent claims, is a condition precedent to admissibility of that matter in evidence. Evid.R. 901(A). Illustrative examples of proof of authentication are set out in Evid.R. 901(B)(1) through (10). A showing that an exception to the rule against hearsay applies satisfies the example in Evid.R. 901(B)(10). The example most frequently applied is in Evid.R. 901(B)(1): "Testimony of witness with knowledge. Testimony that a matter is what it is claimed to be."

{¶ 28} No witness with personal knowledge testified about ATN's internal recordkeeping or testing procedures or about the recordkeeping at ASTS. Evid.R. 602. The city of Dayton's only two witnesses at the hearing before the board were Ken Thomas and Maurice Evans. Ken Thomas is the safety administrator for the

city of Dayton. He testified that he has never been to ATN's laboratories and has never observed their testing process. He did not exhibit sufficient knowledge of ATN's actual testing procedures or internal recordkeeping. Further, he testified that the medical-review officer does not perform any tests on the urine samples but instead reviews the results of the testing performed by ATN.

{¶ 29} Maurice Evans is the city of Dayton's designated employer representative. He testified regarding his familiarity with the process used in collecting urine samples for drug tests. But he does not test the urine samples and relies on others to provide those test results.

{¶ 30} In short, there is no evidence of record demonstrating that the documentary evidence of positive test results and the ultimate conclusions reached therefrom were trustworthy. This is the very type of evidence that the requirement of authentication in Evid.R. 901(A) was meant to preclude from consideration. Without testimony from a witness who could testify, based on personal knowledge, regarding the testing procedures and internal recordkeeping of ATN and ASTS, the board and trial court should not have relied on the positive test results. Therefore, the trial court erred in finding that the board's decision was supported by the preponderance of substantial, reliable, and probative

evidence.

{¶ 31} The record suggests that instead of the business-records exception to the rule against hearsay, the city of Dayton attempted to authenticate the records of the medical-review officer's report pursuant to Evid.R. 901(B)(9), which allows authentication through "[e]vidence describing a process or system used to produce a result and showing that the process or system produces an accurate result." To do that, the process or system must be described, and there must be evidence that the process or system produces an accurate result. Those matters may be established by the testimony of a person with knowledge of the process or system. Weissenberger, Ohio Evidence Treatise (2010), Section 901.121. The testimony of the city of Dayton's two witnesses was insufficient to satisfy those requirements.

{¶ 32} We do not, as Judge Hall suggests, hold that the formal and technical requirements of the Rules of Evidence must be satisfied in administrative proceedings. Weissenberger writes: "Conceptually, the function of authentication or identification is to establish, by way of preliminary evidence, a connection between the evidence offered and the relevant facts of the case. The connection is necessary in order to establish the relevancy of the particular item, since an object or item is of no relevance if it is not attributed to, or connected with a particular person,

place, or issue in a case." Id. at Section 901.1.

{¶ 33} The city of Dayton offered the report as relevant to prove the central issue in the case, which is that Royse had used cocaine. But absent evidence of the process by which that conclusion was reached, the report demonstrates nothing more than that the conclusion was reached by persons who did not testify and in accordance with a method of analysis that remains unexplained. As evidence, it is nothing more than proof that the report had been received by the city of Dayton from a person it engaged to prepare such reports. That bare fact does not demonstrate that Royse had used cocaine, which was the basis for his discharge on which the board was required to pass.

{¶ 34} The second assignment of error is sustained. The judgment of the trial court is reversed, and the cause is remanded for further proceedings consistent with this opinion.

Judgment reversed

and cause remanded.

FAIN, J., concurs.

HALL, J., dissents.


HALL, Judge, dissenting:

{¶ 35} I agree with the disposition of the first assignment of error finding that the appellant pursued his administrative

appeal below as an R.C. 2506.01 appeal rather than pursuant to R.C. 124.34. Therefore, he cannot now argue that the trial court should have considered his appeal under the standards applied to the latter section.

{¶ 36} However, because I believe that the Dayton Civil Service Board had authority to rule on objections to admit or exclude evidence, and that the Dayton Civil Service Board reasonably and constitutionally admitted the reports of the appellant's second positive cocaine drug test, the trial court was correct in affirming the Board's decision that he be discharged from his position as a firefighter.

{¶ 37} The result of the majority's opinion, which will require the Dayton Civil Service Board to adhere to the Ohio Rules of Evidence, is unnecessary and undesirable. Admittedly, Dayton Civil Service Board Rules and Regulations 14.5 states:

{¶ 38} "Procedure at hearings. A. The admission of evidence shall be governed by the rules applied by the Courts of Ohio in civil cases."

{¶ 39} In an administrative setting, however, this rule need not, and should not, be construed as adopting the Ohio Rules of Evidence for hearings. A more reasonable interpretation is that the rule refers to the manner of presenting evidence and the general procedure for conducting a hearing. Otherwise, the words "in civil

cases" are superfluous. Those words distinguish the procedure for the presentation of evidence at the civil-service level from the procedure applicable in criminal cases. The rules of evidence apply to both civil and criminal cases, so it is reasonable to infer that the words "in civil cases" were included to encompass the process for admitting evidence, not to require application of the rules of evidence themselves.

{¶ 40} Moreover, Section 5(D) of Civil Service Rule 14 specifically states that "[t]he Board or Hearing Officer conducting a hearing shall have full authority to control the procedure of the hearing, to admit or exclude testimony or other evidence, to rule upon all objections, and to take such other actions as are necessary and proper for the conduct of such hearing." This specific language in Section 5(D) prevails over the introductory Section (5)(A) and grants the board plenary authority to determine the admissibility of evidence.

{¶ 41} A virtually identical rule appears in the decision of this court more than 20 years ago in *Emmons v. Miamisburg* (Mar. 27, 1989), Montgomery App. No. 11197. There, Section 11.1 of the Miamisburg Civil Service Rules and Regulations stated:

{¶ 42} "Appeal and Hearings: *No legal rules of evidence shall be required* and the Civil Service Commission shall determine the manner of conduct of such hearings." (Emphasis added).

{¶ 43} The next rule, Section 11.2, is identical to current Dayton Civil Service Board Rule 14, Section 5. It stated:

{¶ 44} "*Procedure at Hearings*: The admission of evidence shall be governed by the rules applied by the Courts of Ohio in civil cases." (Emphasis added.)

{¶ 45} This language from Section 11.2 of the Miamisburg Civil Service Rules and Regulations, which is of similar vintage to the Dayton rule, cannot possibly be construed to adopt the Ohio Rules of Evidence because the previous section (11.1) specifically excluded the "legal rules of evidence." Likewise, Dayton Civil-Service Board Rule 14, Section 5(A), need not, and should not, be construed to apply the Ohio Rules of Evidence to Dayton civil-service hearings.

{¶ 46} Applicable rules, case law, and statutory procedure all support the notion that rules of evidence should not apply to a civil-service hearing. The Rules of Evidence explicitly state that they govern proceedings "in the *courts* of this state." (Emphasis added.) Evid.R. 101(A). The Ohio Supreme Court has held that "Evid.R. 101(A) does not mention administrative agencies as forums to which the Rules of Evidence apply." *Orange City School Dist. Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision* (1996), 74 Ohio St.3d 415, 417. This court, too, has held that hearsay is admissible in administrative hearings as long as discretion to

admit is not arbitrarily applied. *Haley v. Ohio State Dental Bd.* (1982), 7 Ohio App.3d 1, 6.

{¶ 47} Ohio administrative agencies are to determine what evidence is to be admitted in their proceedings.   R.C. 119.09 states that "[t]he agency shall pass upon the admissibility of evidence."   "[A]dministrative agencies are not bound by the rules of evidence applied in courts." *Black v. Ohio State Bd. of Psychology*, 160 Ohio App.3d 91, 2005-Ohio-1449, at ¶ 17, citing *Haley* at 6. The Ohio Administrative Code, which promulgates rules for various administrative hearings, states: "The 'Ohio Rules of Evidence' may be taken into consideration by the board or its attorney hearing examiner in determining the admissibility of evidence, but shall not be controlling." Ohio Adm.Code 4732-17-03(D)(10).

{¶ 48} Rules of evidence do not apply, statutorily, to workers' compensation hearings. For example, R.C. 4123.10 provides: "The industrial commission shall not be bound by the usual common law or statutory rules of evidence or by any technical or formal rules of procedure." Similarly, the Ohio Rules of Evidence statutorily do not apply to unemployment-compensation hearings. In this regard, R.C. 4141.281(C)(2) provides that "[h]earing officers are not bound by common law or statutory rules of evidence or by technical or formal rules of procedure." Such proceedings are no more or less

significant than Dayton Civil Service Board hearings. And the foregoing statutory provisions express the concept recognized by this court in *Haley*, and others. See, e.g., *Day Lay Egg Farm v. Union Cty. Bd. of Revision* (1989), 62 Ohio App.3d 555, 556 (recognizing that administrative agencies are not bound by rules of evidence). Furthermore, in reviewing a decision of an administrative board, a common pleas court must give "due deference to the administrative resolution of evidentiary conflicts" and, therefore, must not substitute its judgment for that of the administrative agency. *Hawkins v. Marion Corr. Inst.* (1990), 62 Ohio App.3d 863, 870.

{¶ 49} The Dayton Civil Service Board's "Order on Appeal," signed and entered August 21, 2008, is a reasoned and balanced decision as to why the board admitted the evidence presented about the appellant's positive-drug-test results. The appellant's underlying protection is that the hearing was required to comport with procedural and substantive due process. The "process" the appellant was due was the hearing before the Civil Service Board, of which he received notice and an opportunity to be heard. He introduced not a shred of evidence that his test results were inaccurate or unreliable. He presented nothing to the effect that he denied abusing cocaine, the possession of which, if not prescribed, is a felony. A separately preserved one-half of the

tested urine sample was available to him for independent testing. Yet, upon hearing of the second positive drug report, rather than have his own confirmatory test, he checked himself into a drug-treatment facility. He refused the city's request for his medical records, which may have corroborated the test results. Under these circumstances, the appellant was accorded due process.

{¶ 50} In addition to a strict legal analysis why the rules of evidence do not apply in administrative settings, there are numerous practical implications here: (1) this is an administrative proceeding in which strict rules of evidence should not apply, (2) administrative officials often are not legally trained or versed in the nuances of evidentiary rules, (3) at the administrative level, there is no burden or expense-shifting mechanism, such as a request for admissions, to require parties either to admit apparent facts or to bear the cost of proving them, (4) out-of-state test suppliers are routinely relied upon for accuracy in many walks of life, including medicine, and (5) nothing in the record suggests that Royse ever denied having a cocaine-abuse problem.

{¶ 51} The majority holding effectively reinstates a cocaine abuser as a firefighter. I dissent.

. . . . .