[Cite as *HS Fin. Group, L.L.C. v. Hinchee*, 2020-Ohio-4765.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## GREENE COUNTY

| | | |
|---|---|---|
| HS FINANCIAL GROUP, LLC | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2019-CA-67 |
| | : | |
| v. | : | Trial Court Case No. CVF1900600 |
| | : | |
| TERRI HINCHEE | : | (Civil Appeal from Municipal Court) |
| | : | |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

# O P I N I O N

Rendered on the 2nd day of October, 2020.

. . . . . . . . . . .

JEFFREY L. KOBERG, Atty. Reg. No. 0047386, 25651 Detroit Road, Suite 203, Westlake, Ohio 44145
    Attorney for Plaintiff-Appellee

ANDREW J. ZEIGLER, Atty. Reg. No. 0081417, 1340 Woodman Drive, Dayton, Ohio 45432
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Defendant-Appellant, Terri Hinchee, appeals from a summary judgment rendered in favor of Plaintiff-Appellee, HS Financial Group, LLC ("HSFG"). According to Hinchee, the trial court erred in granting summary judgment because the affidavit that HSFG submitted was unauthenticated and inadmissible as evidence.

{¶ 2} We conclude that the trial court erred in awarding summary judgment to HSFG. The affidavit that was submitted failed to comply with the requirements of Evid.R. 803(6), was not properly authenticated, and was inadmissible. Accordingly, the judgment of the trial court will be reversed, and this cause will be remanded for further proceedings.

## I. Facts and Course of Proceedings

{¶ 3} On April 19, 2019, HSFG filed a complaint in the Fairborn Municipal Court, alleging that Hinchee had failed to pay $12,113.83 on a retail installment contract. HSFG further alleged that it had been assigned all rights from Lending Point, LLC, and attached the Bill of Sale and Assignment to the complaint as Exhibit A. In the complaint, HSFG asserted claims for breach of contract, for "stated account," and for unjust enrichment.

{¶ 4} Hinchee filed an answer to the complaint on May 1, 2019, denying the allegations in the complaint. She also asserted several defenses, including that HSFG had not proven it owned the claim. On June 27, 2019, HSFG asked the trial court for leave to file a motion for summary judgment, and Hinchee opposed the motion. After being given leave to file the motion, HSFG filed it on July 2, 2019. Hinchee's prior memorandum was then considered as a response to the summary judgment motion.

{¶ 5} On October 9, 2019, the trial court filed a judgment entry granting HSFG's

motion for summary judgment.   Hinchee filed a timely notice of appeal.

### II.   Was Summary Judgment in HSFG's Favor Appropriate?

{¶ 6} Hinchee's sole assignment of error states that:

The Trial Court Erred by Granting Summary Judgment to Appellee as the Affidavit Relied Upon by the Trial Court in Granting Summary Judgment Contains Hearsay, Is Unauthenticated and Is Inadmissible as Evidence.

{¶ 7}   Hinchee contends that the affidavit of the person signing the affidavit in support of summary judgment (Brenda Watchorn) did not indicate that she knew or was in a position to know how Lending Point, LLC created and archived the records on which the summary judgment motion was based.   In addition, Hinchee argues that there was no tabulation based on personal knowledge or properly authenticated business records of the principal and interest amounts owed.

{¶ 8} In response, HSFG contends that Watchorn's affidavit set forth that she was employed by HSFG, that she was familiar with the facts and circumstances of the account HSFG owned, and that the exhibits attached to the complaint were accurate copies of the originals and were kept in the ordinary course of business.   According to HSFG, the exhibits included the account's complete bill of sale history, which portrayed the transfer record showing a balance transfer of $12,113.83.   HSFG further asserts that Hinchee had the burden to show genuine issues of material fact, but failed to even file an affidavit or other supporting evidence.

{¶ 9} In rendering summary judgment in HSFG's favor, the trial court relied on

Watchorn's affidavit and also noted that Hinchee failed to submit any affidavit or supporting evidence.

{¶ 10} Under settled law, "[a] trial court may grant a moving party summary judgment pursuant to Civ.R. 56 if there are no genuine issues of material fact remaining to be litigated, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party, who is entitled to have the evidence construed most strongly in his favor." *Smith v. Five Rivers MetroParks*, 134 Ohio App.3d 754, 760, 732 N.E.2d 422 (2d Dist.1999), citing *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 375 N.E.2d 46 (1978).

{¶ 11} A party seeking summary judgment has the initial " 'burden of affirmatively demonstrating that, with respect to every essential issue of each count in the complaint, there is no genuine issue of fact.' " *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 115, 526 N.E.2d 798 (1988), quoting *Massaro v. Vernitron Corp.*, 559 F.Supp. 1068, 1073 (D.Mass.1983). "To accomplish this, the movant must be able to point to evidentiary materials of the type listed in Civ.R. 56(C) that a court is to consider in rendering summary judgment. The evidentiary materials listed in Civ.R. 56(C) include 'the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any.' These evidentiary materials must show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996).

{¶ 12} The party opposing summary judgment then has a corresponding burden. That party "may not rest upon its pleadings, but must set forth specific facts showing that

there is a genuine issue for trial." *Todd Dev. Co. v. Morgan*, 116 Ohio St.3d 461, 2008-Ohio-87, 880 N.E.2d 88, ¶ 14, citing Civ.R. 56(E).

{¶ 13} "We review decisions granting summary judgment de novo, which means that we apply the same standards as the trial court." *GNFH, Inc. v. W. Am. Ins. Co.*, 172 Ohio App.3d 127, 2007-Ohio-2722, 873 N.E.2d 345, ¶ 16 (2d Dist.). Consequently, appellate courts do not defer to trial courts during summary judgment review. *Powell v. Rion*, 2012-Ohio-2665, 972 N.E.2d 159, ¶ 6 (2d Dist.), citing *Brown v. Scioto Cty. Bd. of Commrs.*, 87 Ohio App.3d 704, 711, 622 N.E.2d 1153 (4th Dist.1993).

{¶ 14} In arguing that summary judgment was improper, Hinchee relies on our prior decision in *TPI Asset Mgt. v. Conrad-Eiford*, 193 Ohio App.3d 38, 2011-Ohio-1405, 950 N.E.2d 1018, which allegedly contains affidavits similar to Watchorn's. In *TPI*, which involved credit card debt, we considered the " 'business records' exception in Evid.R. 803(6)," which permits hearsay evidence to be admitted as an exception to the hearsay rule. *Id.* at ¶ 8.

{¶ 15} " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). As a general rule, hearsay is not admissible unless specially allowed by statute, by the Ohio or United States Constitutions, by the Ohio Rules of Evidence, or by other rules that the Supreme Court of Ohio prescribes. Evid.R. 802. As pertinent here, Evid.R. 803 provides that:

> The following are not excluded by the hearsay rule, even though the
> declarant is available as a witness:
> * * *

(6) Records of Regularly Conducted Activity. A memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness or as provided by Rule 901(B)(10), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

{¶ 16} " 'To be admissible under Evid.R. 803(6), a business record must display four essential elements: (1) it must have been kept in the regular course of business; (2) it must stem from a source who had personal knowledge of the acts, events, or conditions; (3) it must have been recorded at or near the time of the transaction; and (4) a foundation must be established by the testimony of either the custodian of the record or some other qualified person.' " *Royse v. Dayton*, 195 Ohio App.3d 81, 2011-Ohio-3509, 958 N.E.2d 994, ¶ 25 (2d. Dist.), quoting *State v. Comstock*, 11th Dist. Ashtabula No. 96-A-0058, 1997 WL 531304, *6 (Aug. 29, 1997).

{¶ 17} In *TPI*, we concluded that the evidence did not comply with authentication requirements in Evid.R. 901 and Civ.R. 56(E). First, one affiant's statement that he was authorized to act on the bank's behalf insufficiently demonstrated that he had personal

knowledge of the facts the affidavit contained. Second, his identification as a bank "team leader" did not, standing alone, "portray a basis to find that through that position he gained the required personal knowledge." *TPI*, 193 Ohio App.3d 38, 2011-Ohio-1405, 950 N.E.2d 1018, at ¶ 22. Regarding a second affiant, we concluded that his "assertion that from his own personal knowledge the facts contained in the affidavit were true as he 'verily believe[d],' and that he was 'competent to testify to same,' likewise fails to portray any basis other than [his] own assertion, that he has the required personal knowledge." *Id.* at ¶ 23.

{¶ 18} In the case before us, HSFG attached several documents to the complaint. Exhibit B was a May 24, 2016 consumer loan agreement between Lending Point, LLC d/b/a Lending Point, and Terri Hinchee. The loan number was mostly blackened out, but the last three digits were "264." The loan amount was for $15,000, it provided for an annual percentage rate of 25.4206%, and it specified that 36 monthly payments of $602.28 would be made beginning on 7/1/2016. Ex. B, p. 2.

{¶ 19} Ex. C to the Complaint contained a list of transactions beginning on June 30, 2016 for a loan named "XXXX5689." The beginning loan balance was $15,034.04 and the ending balance on May 31, 2017, was $11,544.51. A "pre charge off int" of $569.32 was added to that balance for a total "charge off bal" of $12,113.83.

{¶ 20} Exhibit A to the complaint contained four pages. In reverse order, the last two pages consisted of a "Bill of Sale" and a document with no title. The Bill of Sale stated that:

> For value received and in further consideration of the mutual covenants and conditions set forth in the Forward Flow Account Purchase

Agreement ("the Agreement") dated June 28, 2017, by and between Lending Point LLC ("Seller") and Argent Holdings, LLC ("Buyer"), Seller hereby transfers, sells, conveys, grants, and delivers to Buyer, its successors and assigns, without recourse except as set forth in the Agreement, to the extent of its ownership, the Accounts as set forth in the Account Schedule attached hereto as Exhibit I delivered by Seller to Buyer on each Closing date, and as further described in the Agreement.

Lot Number:

Aggregate Unpaid Balance:

Number of Accounts:

Dated October 27, 2017.

Ex. A, p. 3.

{¶ 21} As noted, the Seller was listed as Lending Tree, LLC. The name of the individual who signed on behalf of Lending Tree was undecipherable (other than the first name of "Greg"), and the title given ("C.L.O.") was unexplained. Furthermore, the document located behind this Bill of Sale was not labeled Exhibit I; instead, it had no title. The document lists an "acct id" as XXX8148, a "CLTREF" of "XXXXXXX5989," and a first and last name of Terri Hinchee. Ex. A at p. 4.

{¶ 22} The next page of Ex. A was labeled "Exhibit II Bill of Sale." This document stated that:

For value received and in further consideration of the mutual covenants and conditions set forth in the Account Purchase Agreement ("the Agreement") dated May 11, 2018, by and between Argent Holdings,

LLC ("Seller") and Security Credit Services, LLC ("Buyer"), Seller hereby transfers, sells, conveys, grants, and delivers to Buyer, its successors and assigns, without recourse except as set forth in the Agreement, to the extent of its ownership, the Accounts as set forth in the Account Schedule attached hereto as Exhibit I delivered by Seller to Buyer on each Closing Date, and as further described in the Agreement.

Exhibit A at p. 2.

{¶ 23} On this bill of sale, the Lot Number, Aggregate Unpaid Balance, and Number of Accounts were blackened out. In addition, no "Exhibit I" or any account schedule was attached. The name of the signer was Mark Hedge, "President." *Id.*

{¶ 24} The final document in Exhibit A was an "Assignment and Bill of Sale, SCS-HSF LNP 1MM 9.25.2018." *Id.* at p. 1. This document stated as follows:

Security Credit Services, LLC ("Seller") has entered into an Accounts Purchase Agreement, dated September 25, 2018 ("Agreement") for the sale of Accounts described in Agreement thereof to HS Financial Group, LLC ("Purchaser"), upon terms and conditions set forth in that Agreement. NOW, THEREFORE, for good and valuable consideration, Seller hereby sells, assigns, and transfers to Purchaser all of Seller's rights, title, and interest in each and every one of the Accounts described in the Agreement, provided however such transfer is made without any representations, warranties, or recourse.

IN WITNESS WHEREOF, Seller has signed and delivered this instrument on the 26th day of September, 2018.

Ex. A at p. 1.

{¶ 25} The signature on this document was illegible, but the designation of the individual signing was "President." *Id.* No copy of the "Agreement" was attached, nor were any accounts attached or described other than by the general reference above to "Accounts."

{¶ 26} As indicated, HSFG provided the affidavit of Brenda Watchorn in support of its summary judgment motion. Her affidavit provided, in pertinent part, that:

1. That I, Brenda Watchorn, Affiant, am an employee of HS Financial Group, LLC ("HSF"), the Plaintiff herein, and am competent to testify to the matters stated herein:

2. That I have reviewed the facts and circumstances regarding Defendant's account that is the subject matter of this Complaint.

3. That there is justly an amount due and owing by the Defendant to HSF, the sum of money amounting to $12,113.83, representing the charged off amount and interest, less payments received, if any.

4. That the said indebtedness represents the amount due and originating on an account of which HSF is the assignee of Lending Point, LLC, and that HSF, the within Plaintiff, having purchased said account from said assignor, is the owner and the proper party to bring this action.

5. That the Exhibits attached to the Motion for Summary Judgment are true and accurate copies of the originals which are kept in the ordinary course of the Plaintiff's business and under Affiant's control and supervision, that the records have not been altered, and Affiant is the

custodian of these records.

Plaintiff's Motion for Summary Judgment Instanter, Ex. 1, p. 1.

**{¶ 27}** On review, we agree that the affidavit and documents were insufficient. While *TIP* is relevant, we are also unable to distinguish the evidence here from what was submitted in support of summary judgment in *Ohio Receivables, L.L.C. v. Williams*, 2d Dist. Montgomery No. 25427, 2013-Ohio-960. Although some slight differences exist, both *Williams* and the case before us involve plaintiffs who were not the original creditor, but who purportedly were the last assignee in a chain of assignments. *Williams* involved two assignments, while this case involves three. *Id.* at ¶ 3. Furthermore, both cases also involve an attempt by the last assignee (here, HSFG) to authenticate documents of the original creditor.

**{¶ 28}** In considering this issue, we commented in *Williams* that "[t]he business records exception has an authentication requirement which must be met before [Evid.R. 803(6)] applies. * * * '[T]he testifying witness must possess a working knowledge of the specific record-keeping system that produced the document * * * [and] "be able to vouch from personal knowledge of the record-keeping system that such records were kept in the regular course of business." ' " *Id.* at ¶ 14, quoting *State v. Davis*, 62 Ohio St.3d 326, 343, 581 N.E.2d 1362 (1991). We further observed that "[g]enerally, the business record exception requires that some person testify as to the regularity and reliability of the business activity involved in the creation of the record." *Id.*, citing *State v. Hirtzinger*, 124 Ohio App.3d 40, 49, 705 N.E.2d 395 (2d Dist.1997).

**{¶ 29}** Based on the above authority, *Williams* rejected the documents attached to the plaintiff's affidavits because the affidavits were not properly authenticated and, "as

business records of a separate entity," were not properly considered in support of the plaintiff's motion for summary judgment.  *Id.* at ¶ 15.  In this vein, we stressed that:

> Although employees of [the plaintiff] were permitted to state, via affidavit or otherwise, that they had obtained these records in the course of the purchase, they could not attest to the facts that the contract documents between Williams [the debtor] and Chase [the original creditor] reflected the terms of the credit card agreement, that the documents were made at or near the time that the account was opened by someone with knowledge of that transaction, or that the billing statements and spreadsheets were generated in the regular practice of Chase's business activity.
>
> It was not necessary that an employee or agent of Ohio Receivables possess personal knowledge of these facts, but it was necessary for Ohio Receivables to prove, by some means, that the documents on which Ohio Receivables sought to rely as its business records were first business records created and maintained by Chase in the course of its (Chase's) regularly conducted business.

*Id.* at ¶ 18-19.

{¶ 30} The same defects exist in the case before us.  Although Watchorn could have testified that HSFG obtained the documents in the course of a purchase (although that purchase would not have been from Lending Point, as implied by her affidavit), she could not have attested to Lending Point's business activities in connection with the account.

{¶ 31} Furthermore, additional defects exist with regard to the documents attached

to the complaint. For example, the alleged assignment from Security Credit Services to HSFG refers only generally to accounts described in an agreement and has no evident connection with Hinchee's account. The bill of sale from Argent Holdings also refers to accounts listed in "Exhibit I," but contains no such exhibit identifying any accounts. Likewise, the bill of sale from Lending Point refers to accounts set forth in Exhibit I, but lacks such an exhibit.

{¶ 32} In *Williams*, we also rejected the plaintiff's contention that the original creditor's records were admissible as business records because the plaintiff had incorporated those records and relied on them in its own business dealings. *Williams*, 2d Dist. Montgomery No. 25427, 2013-Ohio-960, at ¶ 28-29. We stressed that "although Ohio Receivables argues that it has incorporated and relied on Chase's and Global Credit's documents in its business endeavors, its business endeavor is merely to collect on the debt, not to receive or process payments, send bills, record charges, and the like. In other words, it does not appear that Ohio Receivables does, in fact, rely on these records in its business, except to the extent that it uses them as a basis for this and other lawsuits." *Id.* at ¶ 29.

{¶ 33} As in *Williams*, HSFG has presented no evidence that it is anything other than a debt collector. Moreover, Watchorn's affidavit did not even attempt to indicate that it relied on the documents from other entities in its own business dealings.

{¶ 34} In a subsequent case, we distinguished *Williams*, stating that:

> The rule for admitting adopted business records that we applied in *Williams* does not apply here. This is also a mortgage-foreclosure case not a debt-collection case. And in mortgage-foreclosure cases, we have

applied a different rule: "a court may admit a document as a business record even when the proffering party is not the maker of the document, if the other requirements of Evid.R. 803(6) are met and the circumstances suggest that the record is trustworthy."

*Ocwen Loan Servicing, LLC v. Malish*, 2018-Ohio-1056, 109 N.E.3d 659, ¶ 23 (2d Dist.).

{¶ 35} Unlike *Malish*, the case before us is a debt-collection case, and there is no basis for distinguishing *Williams*. Even if this were otherwise, the evidence presented was deficient for the reasons we mentioned and was untrustworthy.

{¶ 36} The trial court did not address this issue, even though Hinchee raised it in responding to summary judgment. Instead, the court summarily relied on Watchorn's affidavit, while noting that Hinchee did not file an affidavit or documentation under Civ.R. 56(C). Judgment, p. 2. However, "there is no *requirement* in Civ.R. 56 that *any* party submit affidavits to support a motion for summary judgment." (Emphasis sic.) *Dresher*, 75 Ohio St.3d at 298, 662 N.E.2d 264. *See also Smith v. Bauknecht*, 6th Dist. Lucas No. L-10-1286, 2011-Ohio-4046, ¶ 25 ("Civ.R. 56(E) does not require the parties to submit affidavits in support of their summary judgment motions. Rather, Civ.R. 56(E) provides guidelines for the submission of affidavits should affidavits be submitted in support of a summary judgment motion.")

{¶ 37} Civ.R. 56(E) provides that "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, *by affidavit or as otherwise provided in this rule*, must set forth specific facts showing that there is a genuine issue for trial." (Emphasis added.) A movant's failure to provide admissible evidence is

certainly an appropriate basis on which the nonmovant can oppose summary judgment.

{¶ 38} Courts have also held that ""[e]ven if the nonmoving party fails completely to respond to the motion, summary judgment will only be proper where reasonable minds can come to only one conclusion and that conclusion is adverse to the nonmoving party." *Swedlow, Butler, Inman, Levine & Lewis Co. v. Gabelman*, 10th Dist. Franklin No. 97APG12-1578, 1998 WL 400743, *3 (July 14, 1998), citing *Toledo's Great E. Shoppers City, Inc. v. Abde's Black Angus Steak House No. III, Inc.*, 24 Ohio St.3d 198, 202, 494 N.E.2d 1101 (1986). *Accord State ex rel. Dayton Legal News, Inc. v. Drubert*, 2d Dist. Montgomery No. 24825, 2012-Ohio-564, ¶ 7. Here, based on the lack of admissible evidence, HSFG was not entitled to summary judgment.

{¶ 39} Accordingly, Hinchee's sole assignment of error is sustained.


III.   Conclusion

{¶ 40} Hinchee's assignment of error having been sustained, the judgment of the trial court is reversed, and this cause is remanded for further proceedings consistent with this opinion.

. . . . . . . . . . . . .

TUCKER, P.J. and HALL, J., concur.


Copies sent to:

Jeffrey L. Koberg
Andrew J. Zeigler
Hon. Beth W. Cappelli