[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-15192
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 31, 2011
JOHN LEY
CLERK

D.C. Docket No. 1:09-cr-20875-PAS-5

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

HENDY COLLADO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(August 31, 2011)

Before BARKETT, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

Hendy Collado and several co-defendants were charged with stealing two containers of frozen shrimp from a shipping container yard in Jacksonville and transporting them to Miami. It is undisputed that Collado drove his truck into the yard, picked up a container of frozen shrimp, and transported it to Miami. His defense at trial was that he did not know that the shrimp was stolen, and that the government failed to prove that the shrimp was part of interstate commerce and that its value exceeded $1,000. This defense was unsuccessful, as he was ultimately convicted and sentenced for: (i) conspiracy to possess stolen goods valued in excess of $1,000, in violation of 18 U.S.C. §§ 371 and 659; and (ii) possession of stolen goods valued in excess of $1,000, in violation of 18 U.S.C. § 659.

Collado raises three issues on appeal. First, he argues that the district court erroneously admitted unauthenticated hearsay bills of lading and invoices as evidence of the travel history and value of cargo he removed from the Jacksonville yard. Second, he argues that the district court erroneously admitted expert testimony that did not comply with Fed. R. Evid. 702. Third, he argues that the district court erroneously calculated his sentencing guidelines range based on a loss exceeding $200,000, which the government failed properly to establish. We address each of his arguments in turn.

I.

We review the district court's decision to admit the bills of lading and invoices for an abuse of discretion. United States v. Jiminez, 224 F.3d 1243, 1249 (11th Cir. 2000). The bills of lading and invoices show that the stolen shrimp was imported from Thailand and was worth approximately $229,200. The documents were prepared by the shipping companies and were in the custody of the importing companies. Employees of the importing companies testified that the documents pertained to the stolen shrimp and were held by the importing companies in the ordinary course of business. The employees further testified that the documents were created in response to orders placed by the importing companies, that it was the shipping companies' regular practice to prepare and transmit the documents, and that the importing companies checked the documents to ensure they were accurate.

Collado argues that this testimony failed to adequately authenticate the documents, as required by Fed. R. Evid. 901(a). The requirement that documents be authenticated before admission "is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed. R. Evid. 901(a). One example of such authenticating evidence is testimony that a matter is what it is claimed to be. Fed. R. Evid. 901(b)(1). The importing companies'

3

employees provided this evidence when they testified that the documents did in fact pertain to the shrimp stolen from Jacksonville and were accurate. Thus, the district court did not abuse its discretion in ruling that the evidence had been authenticated.

Collado also argues that the documents were improperly admitted under Fed. R. Evid. 803(6), the business records exception to the hearsay rule. Under the business records exception, the following is not excluded by the rule barring hearsay:

> A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with Rule 902(11), Rule 902(12), or a statute permitting certification, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

Fed.R.Evid. 803(6). The touchstone of admissibility under Rule 803(6) is reliability, and a trial judge has broad discretion to determine the admissibility of such evidence. United States v. Arias-Izquierdo, 449 F.3d 1168, 1183 (11th Cir. 2006). "To be admitted under that exception the person who actually prepared the documents need not have testified so long as other circumstantial evidence and

4

testimony suggest their trustworthiness. Nor is it required that the records be prepared by the business which has custody of them." United States v. Parker, 749 F.2d 628, 633 (11th Cir. 1984) (internal quotation marks and citations omitted). Here, given the testimony of the documents' custodians, the importing companies' employees, that the documents were kept in the ordinary course of business, and were prepared as a regular business practice and soon after the orders were transmitted to the shipping companies, the district court did not abuse its discretion in ruling that the documents were admissible as business records. Id. "That the witness[es] and [their] compan[ies] had neither prepared the [documents] nor had first-hand knowledge of the preparation does not contravene Rule 803(6)." Id.

Finally, Collado argues that the documents should have been excluded because the government did not provide advance notice under Fed. R. Evid. 902(11) of its intent to introduce them. However, the advance notice requirement of Rule 902(11) only applies to authentication via a written certification. No advance notice was required here because the documents were authenticated by testifying witnesses.

II.

We review the district court's admission of the testimony Collado contends constituted improper expert testimony for an abuse of discretion. Jiminez, 224 F.3d at 1249. The testimony concerned the standard practices of truck drivers. One witness, the terminal manager of the Jacksonville container yard, testified that when truckers came to the yard to pick up cargo, they were required to present certain paperwork, to inspect the container and its contents, and to sign certain paperwork. Another witness, the owner of the trucking company that Collado was working for, testified that Collado was required by the company and federal law to document his time and the loads he transported. As Collado did not comply with these requirements, the government argued that Collado knew that he was involved in an illegal scheme.

The government contends that this testimony constituted lay opinion testimony under Fed. R. Evid. 701. Rule 701 permits an officer or employee of a corporation to offer lay opinion testimony about industry standards. United States v. Hill, 643 F.3d 807, 841 (11th Cir. 2011). This is all the witnesses here testified about; they merely described shipping practices with which they were familiar, based on their own observations and personal experience. The district court, therefore, did not abuse its discretion in admitting their testimony.

III.

Lastly, Collado challenges the district court's determination of the loss amount, arguing that the district court erred in calculating the fair market value of the stolen shrimp. We review the district court's amount-of-loss determination for clear error. United States v. Cabrera, 172 F.3d 1287, 1292 (11th Cir. 1999). Although the district court's loss calculation may not be mere speculation, it need not be completely precise, and will survive review as long as it makes a reasonable estimate of the loss amount. United States v. Walker, 490 F.3d 1282, 1300 (11th Cir. 2007).

Under the guidelines, the base offense level is increased by 12 where the total loss exceeds $200,000, but does not exceed $400,000. U.S.S.G. § 2B1.1(b)(1)(G). "In measuring loss, we generally apply the fair market value of the property taken." United States v. Patterson, 595 F.3d 1324, 1326 (11th Cir. 2010). The fair market value, for purposes of U.S.S.G. § 2B1.1(b)(1), "does not refer to one uniform measure, such as the retail value, but rather the market in which the property was in at the time of the offense." United States v. Machado 333 F.3d 1225, 1228 (11th Cir. 2003).

Here, evidence of the amount of loss was presented in the form of invoices indicating that the total value of the stolen cargo was $229,200. Moreover, sales

personnel from the victim companies provided testimony corroborating the invoice amounts. At sentencing, Collado acknowledged that the invoices reflected the wholesale prices as charged by the offshore suppliers to their customers, who were wholesale distributors. As the stolen cargo had left its original source and was in delivery to the wholesale customers at the time of the offenses, the wholesale prices on the invoices represented the value of the cargo in the "market in which the property was in at the time of the offense." Machado, 333 F.3d at 1228. Thus, the district court did not clearly err in relying on the invoices to calculate the loss amount, and we cannot say that the district court's calculation was an unreasonable estimate of the loss amount.

**AFFIRMED.**