22

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellee,

v.

ANDERS et al., Appellants.

[Cite as *State Farm Mut. Auto. Ins. Co. v. Anders*, 197 Ohio App.3d 22, 2012-Ohio-824.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 11AP–511.

Decided March 1, 2012.

Zeehandelar, Sabatino & Associates, L.L.C., Steven J. Zeehandelar, and Alessandro Sabatino Jr., for appellee.

Reminger Co., L.P.A., Kevin P. Foley, Melvin J. Davis, and Stephanie Ingram, for appellants.

FRENCH, Judge.

{¶ 1} Defendants-appellants, Brian K. Anders and Celadon Trucking Services, Inc., appeal the judgment of the Franklin County Municipal Court in favor of plaintiff-appellee, State Farm Mutual Automobile Insurance Company. For the following reasons, we affirm.

## I. BACKGROUND

{¶ 2} State Farm filed this subrogation action on October 21, 2009, to recover money paid to or on behalf of its insured, Mark Poland, as the result of a motor vehicle accident that occurred on December 9, 2008. State Farm alleges that Anders, while in the course and scope of his employment by Celadon, negligently

operated a motor vehicle so as to cause a collision with the motor vehicle operated by Poland. State Farm further alleges that it paid $8,642.06 on behalf of Poland, pursuant to Poland's insurance policy, and that it is subrogated in that amount.

{¶ 3} At a bench trial on April 21, 2011, the testimony revealed the following facts. At approximately 8:00 a.m. on December 9, 2008, Poland was traveling in the right lane of westbound I–270, between Sawmill Road and State Route 33, in Dublin, Ohio. Poland attempted to brake when he noticed brake lights ahead, but he lost control of his vehicle on the wet road, and the front passenger side of his vehicle collided with the barrier wall along the right side of the freeway. Upon impact, Poland's vehicle spun, and the front of his vehicle reentered the right lane of travel, so that his vehicle was facing south, perpendicular to the lane of travel. Ann Miller, who was driving the vehicle behind Poland, came to a complete stop. Anders, who was driving a tractor-semitrailer in the right lane, two vehicles behind Poland, collided with Miller's vehicle, which spun in front of Poland's vehicle, and came to rest with its driver's side against the barrier wall. The semi then collided with Poland's vehicle, and, as a result, the rear of Poland's vehicle struck the barrier wall.

{¶ 4} In order to prove the damage to Poland's vehicle caused by the collision with the semi, State Farm presented the expert testimony of Thomas Showalter, an "auto estimatics inspector" employed by State Farm. Showalter's prior experience includes writing estimates for damaged automobiles on behalf of State Farm and management and ownership of automotive body shops. Showalter's current job duties involve monitoring State Farm's "select service shop facilities" and auditing estimates written by body shops for fairness and accuracy. Showalter explained that to be a select service facility, "[t]here is a certain agreement that [the facility has] to abide by in preparing [its] estimates and uploading photos to document the file." With respect to this case, Showalter reviewed a $9,857.04 estimate to repair Poland's vehicle. The estimate, prepared by Tansky's Advanced Auto Body, a State Farm select service facility, was included in State Farm's claim file. The Tansky estimate, dated December 16, 2008, lists an inspection date of December 9, 2008, the date of the accident. Showalter, who normally evaluates estimates prepared by State Farm's select service facilities by looking at photographs, testified that the Tansky estimate was reasonable.

{¶ 5} Showalter testified that he was requested to review the Tansky estimate and to separate the damages caused by Poland's initial collision with the barrier wall from the damages attributable to the collision with the semi operated by Anders. In addition to the Tansky estimate, Showalter considered the facts of the collision, the police accident report, and photographs of Poland's vehicle taken by Tansky, but he did not personally inspect Poland's vehicle. Showalter testified that both the estimate and the photographs were provided to State Farm

in the normal course of handling a claim. Based upon his review of the documents and his experience, Showalter testified that the damage caused by Poland's initial impact with the barrier wall totaled $1,535.27 and that the remainder of the $9,857.04 Tansky estimate represented damages associated with the impact with the semi. Although Showalter prefers to look at a vehicle when preparing a repair estimate, he stated that he was able to complete his task in this case without personally observing Poland's vehicle.

{¶ 6} Appellants objected to Showalter's testimony regarding the Tansky estimate and photographs and moved to exclude those exhibits as hearsay. Appellants also moved to strike Showalter's expert testimony, as improperly reliant on inadmissible hearsay. Appellants argued that the absence of a witness from Tansky to testify that the estimate and photographs were prepared in the ordinary course and scope of its business and to testify to their accuracy rendered the documents inadmissible. The trial court overruled appellants' objections and admitted the exhibits, as well as Showalter's testimony. The trial court expressly found that the Tansky estimate and photographs were business records between Tansky and State Farm and were admissible under the hearsay exception set forth in Evid.R. 803(6).

{¶ 7} On May 18, 2011, the trial court entered judgment in favor of State Farm and against appellants, jointly and severally, in the amount of $8,321.77, plus costs and postjudgment interest. Appellants filed a timely notice of appeal.

## II. ASSIGNMENTS OF ERROR

{¶ 8} Appellants assert the following assignments of error for our consideration:

(1) The trial court abused its discretion by admitting Tansky's repair estimate into evidence because there was no testimony by any witness that prepared the estimate or had personal knowledge of Tansky's record-keeping system.

(2) The trial court abused its discretion by admitting Tansky's photographs into evidence because there was no testimony to authenticate the photographs.

(3) The trial court abused its discretion by permitting state farm's expert to render opinions based upon hearsay documents that were prepared by Tansky.

(4) The trial court abused its discretion by permitting state farm's expert to render opinions that were not based upon reliable, scientific information.

## III. DISCUSSION

{¶ 9} Each of appellants' assignments of error stems from the trial court's admission of evidence. A trial court has broad discretion to determine

whether to admit or exclude evidence, and an appellate court will not disturb the trial court's determination absent an abuse of discretion. *Krischbaum v. Dillon,* 58 Ohio St.3d 58, 66, 567 N.E.2d 1291 (1991). " '[A]buse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). Even upon a showing of an abuse of discretion, a reviewing court will uphold a trial court's evidentiary ruling unless the appellant also establishes that the abuse of discretion caused material prejudice to him or her. *Banford v. Aldrich Chem. Co., Inc.,* 126 Ohio St.3d 210, 2010-Ohio-2470, 932 N.E.2d 313, ¶ 38.

## A. First Assignment of Error

{¶ 10} By their first assignment of error, appellants contend that the trial court abused its discretion by admitting the Tansky estimate, which appellants maintain is hearsay and outside the scope of the business-records exception to the hearsay rule. Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). The Ohio Rules of Evidence forbid the use of hearsay evidence absent a recognized exception. Evid.R. 802. There is no dispute that the Tansky estimate, which was introduced to establish the damage to Poland's vehicle, meets the general definition of hearsay. Nevertheless, State Farm argues, and the trial court found, that the estimate fits within the exception to the hearsay rule set forth in Evid.R. 803(6).

{¶ 11} Evid.R. 803(6), commonly referred to as the "business-records exception," provides that the following documents are not hearsay:

> **Records of regularly conducted activity.** A memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness or as provided by Rule 901(B)(10), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

*See also* R.C. 2317.40.[1] The business-records exception "is based on the assumption that the records, made in the regular course of business by those who have a

---

1. R.C. 2317.40 provides: "A record of an act, condition, or event, in so far as relevant, is competent evidence if the custodian or the person who made such record or under whose supervision such record was made testifies to its identity and the mode of its preparation, and

competent knowledge of the facts recorded and a self-interest to be served through the accuracy of the entries made and kept with knowledge that they will be relied upon in a systematic conduct of such business, are accurate and trustworthy." *Weis v. Weis*, 147 Ohio St. 416, 425–426, 72 N.E.2d 245 (1947).

{¶ 12} To qualify for the business-records exception, a record must meet the following criteria: (1) the record must be one recorded regularly in a regularly conducted activity, (2) a person with knowledge of the act, event, or condition recorded must have made the record, (3) it must have been recorded at or near the time of the act, event, or condition, and (4) the party who seeks to introduce the record must lay a foundation through testimony of the record custodian or some other qualified witness. *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E.2d 31, ¶ 171. Even when these prerequisites are met, however, the trial court may exclude a record "if 'the source of information or the method or circumstances of preparation indicate [a] lack of trustworthiness.'" Id., quoting Evid.R. 803(6). A trial court abuses its discretion when it admits a business record in the absence of an adequate foundation to establish admissibility under Evid.R. 803(6). *State v. Myers*, 153 Ohio App.3d 547, 2003-Ohio-4135, 795 N.E.2d 77, ¶ 58 (10th Dist.).

{¶ 13} Appellants maintain that State Farm failed to present evidence sufficient to establish an adequate foundation for admission of the Tansky estimate as a business record because it presented no testimony from a record custodian or other qualified witness concerning the preparation, maintenance, or retrieval of the estimate. Appellants argue that State Farm was required to produce a Tansky employee to testify and authenticate the estimate, and they contend that Showalter was not a "qualified witness" because he had no contact with any Tansky employee and was not present for Tansky's inspection of Poland's vehicle or for Tansky's preparation of the estimate. We must interpret the term "other qualified witness" in Evid.R. 803(6) broadly. *Deutsche Bank Natl. Trust Co. v. Hansen*, 5th Dist. No. 2010 CA 00001, 2011-Ohio-1223, 2011 WL 899625, ¶ 23, citing *State v. Patton*, 3d Dist. No. 1–91–12, 1992 WL 42806 (Mar. 5, 1992).

{¶ 14} Appellants identify several Ohio cases addressing the admission or exclusion of repair estimates where there is no testimony from the person who actually prepared the estimates. *See, e.g., Mong v. Dotson*, 2d Dist. No. 1173CA, 1987 WL 8029 (Mar. 17, 1987). The *Mong* court noted, " 'The business records exception derives its circumstantial guaranty of trust-worthiness from the fact that records made in the ordinary course of business by employees under an

---

if it was made in the regular course of business, at or near the time of the act, condition, or event, and if, in the opinion of the court, the sources of information, method, and time of preparation were such as to justify its admission."

obligation to make such records will be accurate because business cannot, as a matter of course, function without accurate records.' " *Id.*, quoting Staff Note, Evid.R. 803(6). In *Mong*, the plaintiff submitted an estimate, prepared by a semitrailer dealership, as evidence of the cost to repair his trailer after an automobile accident. The dealership's branch manager, who did not prepare the estimate, testified about it. Even though the court recognized that the witness was the custodian of the estimate if it qualified as a business record, the court held that "it was error to have admitted [the] estimate * * * without the testimony of the person who actually prepared [it]." *Id.*; *see also Amjoy Co., Inc. v. Braggs*, 8th Dist. No. 64708, 1994 WL 43886 (Feb. 10, 1994), citing *Mong* (finding no abuse of discretion in the trial court's exclusion of an estimate for apartment repairs where the property manager, rather than the person who prepared the estimate, was called as a foundational witness).

{¶ 15} *Mong* is not only readily distinguishable from this case, but is also contrary to more recent decisions of this court. First, in *Mong*, the Second District suggested an unwillingness to consider a repair estimate a business record, regardless of the foundation laid. The court stated that the reference to accuracy in the Staff Note to Evid.R. 803(6) encompasses facts, such as acts, conditions, and events, but not opinions, such as an estimate of the likely cost to repair a vehicle. *But see State v. Aberle*, 5th Dist. No. 03 CA 96, 2004-Ohio-7093, 2004 WL 2988299 (finding no abuse of discretion in the admission of a repair estimate as a business record). Appellants here do not argue that the Tansky estimate could not qualify as a business record, but argue only that State Farm failed to lay an adequate foundation for its admission under Evid.R. 803(6). Next, contrary to the Second District's holding, Ohio courts, including this court, have held that Evid.R. 803(6) " 'does not require the witness whose testimony establishes the foundation for a business record to have personal knowledge of the exact circumstances of preparation and production of the document.' " *Jefferson v. CareWorks of Ohio, Ltd.*, 193 Ohio App.3d 615, 2011-Ohio-1940, 953 N.E.2d 353, ¶ 11 (10th Dist.), quoting *Myers*, 153 Ohio App.3d 547, 2003-Ohio-4135, 795 N.E.2d 77, at ¶ 60. Nor must the witness have firsthand knowledge of the transaction giving rise to the record. *State v. Vrona*, 47 Ohio App.3d 145, 547 N.E.2d 1189 (9th Dist.1988), paragraph two of the syllabus.

{¶ 16} A qualified witness need only " 'demonstrate that he or she is sufficiently familiar with the operation of the business and with the circumstances of the preparation, maintenance, and retrieval of the record in order to reasonably testify on the basis of this knowledge that the record is what it purports to be, and was made in the ordinary course of business.' " *Myers* at ¶ 60, quoting *Keeva J. Kekst Architects, Inc. v. George*, 8th Dist. No. 70835, 1997 WL 253171 (May 15, 1997); *see also Discover Bank v. Poling*, 10th Dist. No. 04AP–1117,

2005-Ohio-1543, 2005 WL 737404, ¶ 12. We have recognized that requiring a foundational witness to have personally participated in the creation of the document " 'would eviscerate the business records exception, since no document could be admitted unless the preparer (and possibly others involved in the information-gathering process) personally testified as to its creation.' " *State v. Goines,* 10th Dist. No. 89AP–916, 1990 WL 210706 (Dec. 20, 1990), quoting *United States v. Keplinger,* 776 F.2d 678, 693–694 (7th Cir.1985).

█ {¶ 17} State Farm argues that it incorporated the Tansky estimate into its own business records and that its own employee could, therefore, lay an adequate foundation for admission of the estimate. Numerous federal courts have addressed whether documents may be admitted as business records of an entity other than the maker of the records under Fed.R.Evid. 803(6). Because Fed.R.Evid. 803(6) and Ohio's version of the business-records exception are nearly identical, we find federal case law instructive on this issue. *See Great Seneca Financial v. Felty,* 170 Ohio App.3d 737, 2006-Ohio-6618, 869 N.E.2d 30, ¶ 14 (1st Dist.).

{¶ 18} Several federal circuits have permitted admission of documents incorporated into a business's records, although prepared by third parties. For example, in *United States v. Ullrich,* 580 F.2d 765, 772 (5th Cir.1978), the Fifth Circuit held that documents kept by an automobile dealership in the regular course of its business, but prepared and furnished to the dealership by a credit company and an automobile manufacturer, "obvious[ly]" qualified as business records of the dealership, which integrated them into its own records and relied on them. *Id.* The court stated that "[a]lthough these documents were furnished originally from other sources, [the dealership employee] testified that they were kept in the regular course of the dealership's business." *Id.* at 771. Based on the testimony of the dealership employee, the court held that admission of the records was appropriate, where the records were transmitted to the dealership by persons with knowledge and were then confirmed and used in the regular course of the dealership's business. *See also United States v. Collado,* 439 Fed.Appx. 845, 848 (11th Cir.2011), citing *United States v. Parker,* 749 F.2d 628, 633 (11th Cir.1984); *United States v. Childs,* 5 F.3d 1328, 1334 (9th Cir.1993); *United States v. Jakobetz,* 955 F.2d 786, 801 (2d Cir.1992) ("Even if the document is originally created by another entity, its creator need not testify when the document has been incorporated into the business records of the testifying entity").

{¶ 19} The Tenth Circuit recently reaffirmed its adherence to the adoptive-business-records doctrine and its rejection of the "anachronistic rule" that once required foundational testimony to be given by the preparer of a business record. *United States v. Irvin,* 656 F.3d 1151, 1161 (10th Cir.2011), citing *United States v.*

*Carranco*, 551 F.2d 1197, 1200 (10th Cir.1977). The *Irvin* court stated, at 1162, as follows:

> [T]he adoptive business records doctrine comports perfectly with the spirit motivating the business records exception to the hearsay rule: that satisfaction of Rule 803(6)'s requirements confers "a presumption of accuracy, accorded because the information is part of a regularly conducted activity * * * and because of the accuracy demanded in the conduct of the nation's business." *United States v. Snyder*, 787 F.2d 1429, 1433–34 (10th Cir.1986).

{¶ 20} The Federal Circuit Court of Appeals addressed this issue extensively in *Air Land Forwarders, Inc. v. United States*, 172 F.3d 1338 (Fed.Cir.1999). The plaintiffs there were private carriers that transported household belongings of military personnel who had been transferred or separated from service. The carriers filed suit to recover offsets against transportation charges taken by the United States, as a result of claims for loss or damage to service members' property. Service members who initiated a claim against the United States for lost or damaged goods were permitted to submit repair estimates, prepared by third parties, in support of their claims. The sole issue on appeal was whether the trial court erred by admitting into evidence, as business records of the military, the repair estimates submitted in support of service members' claims.

{¶ 21} The plaintiffs argued that the estimates did not qualify as business records because the government's witnesses could not establish that (1) the estimates had been prepared by persons with firsthand knowledge of the damage, (2) the preparers of the estimates were engaged in the regular business of repairing damaged goods, and (3) the estimates were prepared as part of a regular business activity. In response, the government argued that the trial court properly admitted the estimates as the military's own business records, even though they were created by third parties.

{¶ 22} The Federal Circuit generally recognized other circuits' holdings that "Rule 803(6) does not require that the document actually be prepared by the business entity proffering [it]" and that "a document prepared by a third party is properly admitted as part of the business entity's records if the business integrated the document into its records and relied upon it." *Id.* at 1342–1343. Ultimately, the court held that testimony of a witness with firsthand knowledge of the procedures used in the preparation of the estimates was unnecessary "where an organization incorporated the records of another entity into its own, relied upon those records in its day-to-day operations, and where there are other strong indicia of reliability." *Id.* at 1344. The court recognized two factors that would allow an incorporated document to be admitted based on the foundational testimony of a witness with firsthand knowledge only of the incorporating business's record-keeping procedures. Those factors are (1) the incorporating

business's reliance upon the accuracy of the document and (2) the existence of other circumstances indicating the document's trustworthiness.

{¶ 23} The Federal Circuit concluded that the military incorporated and relied on the estimates in *Air Land Forwarders* during its claims-adjudication process and that other circumstances indicated the estimates' trustworthiness. The court specifically recognized an assurance of trustworthiness in the fact that service members were subject to criminal sanctions for submitting false claims. As an additional indicator of reliability, the court cited the trial court's finding that Military Claims Office personnel were responsible for familiarizing themselves with local estimators' competency and with the estimating process generally, so that they could reject questionable estimates. Based on those findings, the Federal Circuit held that the trial court did not abuse its discretion by admitting the estimates as military business records.

{¶ 24} Another circumstance that may indicate the trustworthiness of a document proffered as a business record is an ongoing business relationship between the business that created the record and the incorporating business. *See White Industries, Inc. v. Cessna Aircraft Co.,* 611 F.Supp. 1049 (W.D.Mo.1985). In *White,* the court held that each person involved in transmitting the information must have been acting under a business duty in connection with the transmittal. The court stated, at 1061, as follows:

> [G]eneral indicia of trustworthiness * * * can * * * be found in *some* situations where the reporting duty arises by way of a continuing business relationship between two independent business entities. For example, a business entity's interest in receiving information can be quite as easily found in a continuing contractual requirement for the same as in a directive to employees, at least when the receiving entity customarily uses and relies on that information. The counterpart element of compulsion and potential sanction as concerns the reporting entity can likewise be found in a continuing contractual requirement, if the requirement is sufficiently specific and if the nature of the information to be furnished is such as to suggest that both entities would attach some significance to the requirement.

(Emphasis sic.)

{¶ 25} The Ohio First District Court of Appeals addressed this issue and relied on federal caselaw in *Great Seneca Financial,* 170 Ohio App.3d 737, 2006-Ohio-6618, 869 N.E.2d 30. The court specifically recognized federal holdings that "exhibits can be admitted as business records of an entity, even when that entity was not the maker of those records, provided that the other requirements of Fed.R.Evid. 803(6) are met and the circumstances indicate that the records are trustworthy." *Id.* at 743, 2006-Ohio-6618, 869 N.E.2d 30. The records in that case consisted of a credit card application and credit card statements created by

First USA, but subsequently assigned to Great Seneca Financial ("GSF") along with the defendant's credit card account. A GSF employee testified, by affidavit, that the records had been transferred to GSF, were kept by GSF in its regular course of its business, had been certified by an intermediary of First USA, and had been relied upon by GSF. The court concluded that the GSF employee's affidavit was sufficient to authenticate the documents and to establish that the documents were trustworthy and admissible under Evid.R. 803(6), even though GSF did not create the documents and the testifying employee had no firsthand knowledge regarding the creation of the records or of First USA's procedures for creating them. *See also RBS Citizens, N.A. v. Zigdon,* 8th Dist. No. 93945, 2010-Ohio-3511, 2010 WL 2961534 (RBS legal specialist's affidavit, based on her review of loan file documents created by Charter One, was admissible under the business-records exception); *E. Sav. Bank v. Bucci,* 7th Dist. No. 08 MA 28, 2008-Ohio-6363, 2008 WL 5124559 (Evid.R. 803(6) does not prohibit introduction of company records, kept in the regular course of business, that were made by an outside source that was under a business duty to the recipient to be accurate).

{¶ 26} We acknowledge the recent, broad statement by the Second District Court of Appeals that " 'information in reports that a business receives from outside sources is not part of its business records for the purposes of Evid.R. 803(6).' " *Royse v. Dayton,* 195 Ohio App.3d 81, 2011-Ohio-3509, 958 N.E.2d 994, ¶ 26 (2d Dist.), quoting *Babb v. Ford Motor Co., Inc.,* 41 Ohio App.3d 174, 177, 535 N.E.2d 676 (8th Dist.1987). In *Babb,* at 177, 535 N.E.2d 676, the Eighth District Court of Appeals held that consumers' unsolicited letters to a car manufacturer, complaining of defects, were not business records of the manufacturer for the purpose of showing that the writers accurately reported the information in the letters, because "[t]he writers were not part of the 'regularly conducted business activity,' nor did the writers derive their information from such persons." The letter writers in *Babb* were individuals under no duty to accurately report the information contained in their letters, however. *Babb* did not involve one business incorporating records from another business into its own records and relying on those records. Moreover, there was no evidence that the car manufacturer relied on the letters in the ordinary course of its business. *See Bucci* (distinguishing *Babb* because the outside source, the letter writers, had no interest in accuracy to benefit the business recipient). Finally, even the Eighth District, which decided *Babb,* has, more recently, implicitly acknowledged that no hard-and-fast rule precludes the introduction of records prepared by an outside source but incorporated into another business's records. *See Zigdon* (following *Great Seneca Financial* and permitting a bank employee to testify about her review of loan documents received from another bank that originated the loan at issue). For these reasons, we conclude that *Babb* is distinguishable, and neither

it nor *Royse* compels the conclusion that the Tansky estimate was inadmissible as a business record of State Farm.

{¶ 27} There is no dispute that the Tansky estimate constitutes a "memorandum, report, record, or data compilation" under Evid.R. 803(6). Showalter noted that the estimate, which is dated December 16, 2008, listed an inspection date of December 9, 2008, the date of the accident. Showalter testified that photographs accompanying an estimate are normally taken by the estimator and are supposed to be taken at the time of the inspection and uploaded to State Farm with the estimate. From Showalter's testimony, and especially given Tansky's status as a State Farm select service facility, the court could find that the estimate was not only what it purported to be, but also that it was prepared by a person with firsthand knowledge in the regular course of Tansky's business. We conclude that Showalter's testimony was sufficient to authenticate the Tansky documents under Evid.R. 901.

{¶ 28} Showalter's testimony additionally established that Tansky was required to provide State Farm with the estimate, as well as the Tansky photographs, pursuant to its select service facility agreement, in the ordinary course of its business, and that State Farm maintained those documents in its claim file and relied on the documents in the ordinary course of its own, claim-handling business. The continuing business relationship between State Farm and Tansky, with Tansky's designation as a State Farm select service facility and its concomitant obligation to abide by State Farm's requirements in preparing estimates and uploading photographs, constitutes an additional circumstance indicating the trustworthiness of the records. Based on the record, the trial court could conclude that Tansky was operating under a business duty to State Farm to be accurate, and that duty creates a circumstance indicating the trustworthiness of the Tansky estimate. *See Bucci*, 2008-Ohio-6363, 2008 WL 5124559. While appellants argue that they were denied the opportunity to cross-examine the estimator, whom they could have themselves called as a witness, "the inability to cross-examine is not a defense to a business records exception." *Id.* at ¶ 111. From the evidence presented, we conclude that the trial court did not abuse its discretion by admitting the Tansky estimate as a business record, under Evid.R. 803(6). Accordingly, we overrule appellants' first assignment of error.

## B. Second Assignment of Error

{¶ 29} By their second assignment of error, appellants argue that the trial court abused its discretion by admitting the Tansky photographs because State Farm failed to properly authenticate the photographs and because the photographs constitute inadmissible hearsay. Appellants maintain that only a Tansky employee could authenticate the photographs and that Showalter was not quali-

fied to authenticate them because he does not know who took the photographs, does not know when the photographs were taken, does not know if the photographs accurately depicted the damage to Poland's vehicle, and was not present when the photographs were taken.

{¶ 30} "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Evid.R. 901(A). A document may be authenticated by testimony that it is what it is claimed to be. Evid.R. 901(B)(1). A photograph is admissible if it is shown to be an accurate representation of what it purports to represent. *State v. Hannah*, 54 Ohio St.2d 84, 88, 374 N.E.2d 1359 (1978). It is unnecessary to show who took the photograph or when it was taken, provided that there is testimony that the photograph is a fair and accurate representation of what it represents. *State v. Farrah*, 10th Dist. No. 01AP–968, 2002 WL 576110 (Apr. 18, 2002).

{¶ 31} We first note that Poland authenticated many of the Tansky photographs. He testified that the "full photos of the car" in Exhibit J, which included the Tansky photographs, depicted his vehicle as it appeared after the accident, although he was "not sure" about the photographs depicting smaller details of the vehicle. Poland testified that prior to the accident, his vehicle had no damage. Additionally, as with the Tansky estimate, Showalter identified the photographs not taken at the scene of the accident as photographs taken by Tansky and uploaded to State Farm, as required by Tansky's select service facility agreement, in the normal course of State Farm's claim-handling process. Taken together, Poland and Showalter's testimony is sufficient to support a finding that the photographs are what State Farm claim they were. Accordingly, we conclude that the photographs were properly authenticated, as required by Evid.R. 901.

{¶ 32} Next, appellants argue that the photographs, even if properly authenticated, were inadmissible hearsay, not subject to the business-records exception to the hearsay rule. For the same reasons we rejected this argument with respect to the Tansky estimate, we conclude that the trial court did not abuse its discretion in admitting the Tansky photographs as business records. State Farm incorporated the Tansky photographs into its own business records, maintained the photographs in its claim file in the regular course of its business, and relied on the photographs in the regular course of its handling of Poland's claim. Moreover, the ongoing business relationship between State Farm and Tansky, and the business duties Tansky owed State Farm as a select service facility, suggests the trustworthiness of the photographs. Accordingly, we overrule appellants' second assignment of error.

### C. Third Assignment of Error

{¶ 33} In their third assignment of error, appellants contend that the trial court abused its discretion by permitting Showalter to render an expert opinion based upon the Tansky estimate and photographs. Appellants maintain that Showalter's testimony was not based on his firsthand perception of the facts and was improperly based on inadmissible hearsay. We disagree.

{¶ 34} Evid.R. 703 states that "[t]he facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by the expert or admitted in evidence at the hearing." Thus, the facts underlying an expert's opinion must be either part of the expert's personal knowledge or admitted into evidence at the hearing or trial. *Frazier v. Ohio State Univ. Hosp.*, 10th Dist. No. 95API06–774, 1995 WL 771444 (Dec. 19, 1995). Appellants cite *State v. Jones*, 9 Ohio St.3d 123, 459 N.E.2d 526 (1984), in support of their position, but *Jones* simply reaffirmed that the facts upon which an expert bases an opinion must be perceived by the expert or admitted in evidence. In that case, the expert's opinion was based upon other doctors' reports not admitted into evidence.

{¶ 35} Showalter admittedly did not inspect Poland's vehicle. Nevertheless, his testimony is admissible if it is based upon facts otherwise admitted in evidence at trial. Showalter considered the facts of the collision, reviewed the police report, and reviewed the Tansky estimate and photographs in State Farm's claim file to develop his opinion. As we have previously concluded, the trial court appropriately admitted the Tansky estimate and photographs into evidence at trial. Furthermore, the trial court admitted the police accident report and the photographs taken at the accident scene without objection. Accordingly, because Showalter's opinion was based on facts admitted into evidence, his testimony was admissible under Evid.R. 703. We overrule appellants' third assignment of error.

### D. Fourth Assignment of Error

{¶ 36} Appellants' fourth and final assignment of error contends that the trial court abused its discretion by admitting Showalter's expert testimony because his opinion was not based upon reliable, scientific information.

{¶ 37} Trial courts have broad discretion to determine the admissibility of expert testimony, subject to review only for abuse of discretion. *Terry v. Caputo*, 115 Ohio St.3d 351, 2007-Ohio-5023, 875 N.E.2d 72, ¶ 16, citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). Trial courts generally should admit expert testimony when it is relevant and when the criteria of Evid.R. 702 are satisfied. *Terry* at ¶ 23, citing *State v. Nemeth*, 82 Ohio St.3d 202, 207, 694 N.E.2d 1332 (1998). Evid.R. 702(C) requires

that an expert's opinion be based upon "reliable scientific, technical, or other specialized information." It imposes upon the trial court an obligation to assess both the relevance of the expert's testimony and the reliability of the expert's methodology. *Miller v. Bike Athletic Co.*, 80 Ohio St.3d 607, 687 N.E.2d 735 (1998). In determining whether expert testimony is reliable, the court's inquiry must focus on whether the principles and methods the expert employed to reach his or her opinion are reliable, not whether the expert's conclusions are accurate. *Id.* at 611, 687 N.E.2d 735.

{¶ 38} In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), the United States Supreme Court displaced the "general acceptance" test enunciated in *Frye v. United States*, 293 F. 1013 (D.C.Cir.1923), and created a more elaborate analysis regarding the admissibility of expert scientific testimony, which implemented the trial court's gatekeeping role of ensuring the relevancy and reliability of scientific evidence. The Supreme Court identified the following four nonexclusive factors to aid in determining the reliability of scientific evidence: (1) whether the theory or scientific technique has been tested, (2) whether it has been subject to peer review or publication, (3) whether there is a known or potential rate of error, and (4) whether the principle is generally accepted in the relevant scientific community. Although recognizing that expert testimony need not be based on scientific information, the Supreme Court expressly limited its discussion in *Daubert* to the scientific context because that was the nature of the testimony at issue. *See Daubert* at 590, fn. 8, 113 S.Ct. 2786, 113 S.Ct. 2786, 125 L.Ed.2d 469.

{¶ 39} Appellants rely on cases, like *Miller* and *Daubert*, that involved the reliability of expert, scientific testimony. For example, the expert's opinion in *Miller* was based on tests or experiments performed at the direction of the expert, a consulting engineer in the areas of mechanical and biomedical engineering. In *Daubert*, the expert testimony, that a specific drug could cause birth defects, was based upon animal studies, pharmacological studies, and reanalysis of previous epidemiological studies. Showalter's expert testimony differs from the expert testimony in those cases because it is not based upon scientific experiments, tests, or studies, but is based on "technical, or other specialized information." *See State v. Boston*, 46 Ohio St.3d 108, 126, 545 N.E.2d 1220 (1989), *holding modified, in part, on other grounds, State v. Dever*, 64 Ohio St.3d 401, 596 N.E.2d 436 (1992) ("experts are not limited just to persons with scientific or technical knowledge but also include other persons with 'specialized knowledge' gained through experience, training or education").

{¶ 40} Although the Supreme Court expressly limited its discussion in *Daubert* to the context of scientific expert opinion, the trial court's gatekeeping function is not limited to expert opinion of a scientific nature. Rather, the United States

Supreme Court extended the trial court's gatekeeping responsibilities to cover nonscientific expert evidence in *Kumho Tire Co.*, 526 U.S. at 141, 119 S.Ct. 1167, 143 L.Ed.2d 238: *"Daubert's* general holding—setting forth the trial judge's general 'gatekeeping' obligation—applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." In fulfilling that obligation, a trial court may consider one or more of the factors enumerated in *Daubert* in determining the reliability of nonscientific, expert testimony if doing so will aid the court. The test of reliability, however, is flexible, and the *Daubert* factors are "neither necessarily nor exclusively [applicable] to all experts or in every case." *Id.* In *Kumho Tire Co.*, 526 U.S. at 152, 119 S.Ct. 1167, 143 L.Ed.2d 238, the Supreme Court emphasized that the trial court fulfills its gatekeeping function by "mak[ing] certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."

{¶ 41} A trial court possesses the same "latitude in deciding *how* to test an expert's reliability * * * as it enjoys when it decides *whether or not* that expert's relevant testimony is reliable." (Emphasis sic.) *Id.* In some cases, "the relevant reliability concerns may focus upon personal knowledge or experience." *Id.*, 526 U.S. at 150, 119 S.Ct. 1167, 143 L.Ed.2d 238. Here, Showalter testified about his education in mechanical engineering, the significant training and continuing education provided by State Farm, and his extensive experience as a manager of an automotive body shop, the owner of an automotive body shop, and an estimator of damages to motor vehicles. Showalter also explained the process he undertook in determining the damages attributable to the collision with Anders's semi. Based on his review of the photographs, the Tansky estimate, the police accident report, and the testimony of the witnesses at trial, Showalter was able to opine what damage to Poland's vehicle was caused by the impact with the semi. The trial court found that Showalter "has the training and expertise and knowledge enough to give an estimate and then take away what the first contact with the wall was." Upon review, we conclude that the trial court did not abuse its discretion, either in its method of assessing Showalter's reliability or by concluding that Showalter's testimony was reliable and admissible. Accordingly, we overrule appellants' fourth assignment of error.

## IV. CONCLUSION

{¶ 42} Having overruled each of appellants' assignments of error, we affirm the judgment of the Franklin County Municipal Court.

Judgment affirmed.

KLATT and TYACK, JJ., concur.