[Cite as *Ohio Receivables, L.L.C. v. Williams*, 2013-Ohio-960.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

| | | |
|---|---|---|
| OHIO RECEIVABLES, LLC | : | |
| Plaintiff-Appellee | : | C.A. CASE NO.   25427 |
| v. | : | T.C. NO.    11CV7371 |
| HEROLD WILLIAMS | : | (Civil appeal from Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . .

## O P I N I O N

Rendered on the ____15th____ day of _____March_____, 2013.

. . . . . . . . . .

RONALD J. KOZAR, Atty. Reg. No. 0010275, Kettering Tower, Suite 2830, 40 N. Main Street, Dayton, Ohio 45423
        Attorney for Plaintiff-Appellee

JACKSON T. MOYER, Atty. Reg. No. 0081119, 471 East Broad Street, 12th Floor, Columbus, Ohio 43215 and NICHOLAS J. CHEEK, Atty. Reg. No. 0086738, 471 E. Broad Street, 12th Floor, Columbus, Ohio 43215
        Attorneys for Defendant-Appellant

. . . . . . . . . .

FROELICH, J.

        **{¶ 1}**   Herold Williams appeals from a judgment of the Montgomery County

Court of Common Pleas, which entered summary judgment in favor of Ohio Receivables, LLC, in its action to collect on a credit card debt.

**{¶ 2}** In 2005, Williams was issued credit card number XXXXXXXXXXXX2114 by Chase Bank USA, N.A. Williams purportedly used the card for purchases totaling $13,037.98, accrued $3,457.92 in interest and fees, and, by 2009, he had an outstanding balance of $16,495.90 on the card. According to records presented in the trial court, his last payment was made in September 2009. Chase "charged off" the debt in December 2009.

**{¶ 3}** In August 2011, Chase sold the debt on Williams's account (as part of a 50-page, single-spaced electronic summary spreadsheet listing each account on a separate line) to Global Acceptance Credit Company, LP ("Global Credit"). Two days later, Global Credit sold 429 of the accounts that it had acquired from Chase, including Williams's account, to Ohio Receivables.

**{¶ 4}** In October 2011, Ohio Receivables filed a complaint against Williams in an attempt to collect on the debt. It subsequently filed a motion for summary judgment and a supplemental memorandum in support of that motion, which included affidavits from Ohio Receivables's agents regarding the assignments of Williams's debt and the amount owed. Williams opposed the motion on the basis that (1) the affidavits offered in support of the motion were not based on personal knowledge, as required by Civ.R. 56, (2) personal knowledge gained from a review of business records, without the presentation of evidence about the creation of those records, was insufficient, and (3) Ohio Receivables's "mere acquisition" of documents from other companies did not make those documents business

records of Ohio Receivables within the meaning of the business records exception to the hearsay rule. Williams also presented his own affidavit and an affidavit from his attorney; both individuals stated that they had been unable to follow or reproduce the calculations that apparently resulted in the amount requested by Ohio Receivables, and that it "[did] not accurately represent the amount due on the credit card." The attorney also stated that he had been unable to open electronic files produced by Ohio Receivables associated with the alleged assignments of Williams's account. Ohio Receivables filed a reply to Williams's memorandum in opposition to the motion for summary judgment, to which it attached affidavits from employees of Chase and Global Credit.

{¶ 5} After reviewing the materials offered in support of and in opposition to summary judgment, the trial court disagreed with Williams's argument that much of Ohio Receivables's evidence was not properly before the court. The trial court also disagreed with Williams's assertion that Ohio Receivables could not rely on records created by other business entities in support of its motion for summary judgment, because Ohio Receivables's employees lacked personal knowledge of the creation of the documents. The trial court acknowledged that Ohio Receivables was "extremely sloppy" with respect to one of the affidavits it submitted, but the court nonetheless appears to have credited that affidavit. The trial court did not rely on or mention the affidavits from Chase and Global Credit that were attached to Ohio Receivables's reply. It granted Ohio Receivables's motion for summary judgment.

{¶ 6} Williams raises one assignment of error on appeal, which challenges the trial court's decision to grant summary judgment.

{¶ 7} Pursuant to Civ.R. 56(C), summary judgment is proper when (1) there is no genuine issue as to any material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds, after construing the evidence most strongly in favor of the nonmoving party, can only conclude adversely to that party. *Zivich v. Mentor Soccer Club, Inc.*, 82 Ohio St.3d 367, 369-370, 696 N.E.2d 201 (1998).

{¶ 8} The moving party carries the initial burden of affirmatively demonstrating that no genuine issue of material fact remains to be litigated. *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 115, 526 N.E.2d 798 (1988). To this end, the movant must be able to point to evidentiary materials of the type listed in Civ.R. 56(C) that a court is to consider in rendering summary judgment. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996). A party moving for summary judgment meets its initial burden by presenting or identifying appropriate evidentiary materials in support of the essential elements of its own claim. *See Todd Dev. Co., Inc. v. Morgan*, 116 Ohio St.3d 461, 2008-Ohio-87, 880 N.E.2d 88, ¶ 13, 18; *Raymond Builders Supply, Inc. v. Slapnicker*, 11th Dist. Ashtabula No. 2003-A-0040, 2004-Ohio-1437, ¶ 5; *Day, Ketterer, Raley, Wright & Rybolt, Ltd. v. Burns*, 5th Dist. Stark No. 1996CA00132, 1996 WL 490694, *1 (Aug. 26, 1996).

{¶ 9} Once the moving party satisfies its burden, the nonmoving party may not rest upon the mere allegations or denials of the party's pleadings. *Id.*; Civ.R. 56(E). Rather, the burden then shifts to the nonmoving party to respond, with affidavits or as otherwise permitted by Civ.R. 56, setting forth specific facts that show that there is a genuine issue of material fact for trial. *Id.* Throughout, the evidence must be construed in favor of the nonmoving party. *Id.*

{¶ 10} Civ.R. 56(C) lists the types of evidentiary materials that a court may

consider in rendering summary judgment; these include "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, filed in the action." Absent an exception, hearsay may not be considered in a motion for summary judgment. *Johnson v. Southview Hosp.*, 2d Dist. Montgomery No, 25049, 2012-Ohio-4974, ¶ 20, citing *Knoth v. Prime Time Marketing Mgmt., Inc*., 2d Dist Montgomery No. 20021, 2004-Ohio-2426, ¶ 13 ("It is fundamental that the evidence offered by affidavit in support of or in opposition to a motion for summary judgment must also be admissible at trial, albeit in different form, in order for the court to rely on it.")

{¶ 11} Appellate review of the trial court's rulings on summary judgment motions is de novo. *Helton v. Scioto Cty. Bd. of Commrs*., 123 Ohio App.3d 158, 162, 703 N.E.2d 841 (4th Dist.1997).

{¶ 12} Evid.R. 801(C) defines hearsay as a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." A "statement," as included in the definition of hearsay, is an oral or written assertion or nonverbal conduct of a person if that conduct is intended by him as an assertion. Evid.R. 801(A). "Proving the contents of a writing presents problems with hearsay, authentication, and the best evidence rule." *U.S. Bank Natl. Assn. v. Higgins*, 2d Dist Montgomery No. 24963, 2012-Ohio-4086, ¶ 15 (internal citations omitted). The records of Chase, Global, and/or Ohio Receivables constitute statements other than those made by a declarant while testifying in trial and are offered to prove the truth of the matters contained in them. The records, therefore, may not be considered in a summary judgment

unless they qualify under an exception to the hearsay rule. Evid.R. 802.

{¶ 13} The hearsay exception relevant to this case is the business records exception. Evid.R. 803(6) provides that the following evidence is not excluded by the rule against hearsay:

> Records of regularly conducted activity. A memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness or as provided by Rule 901(B)(10), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. * * *

{¶ 14} The business records exception has an authentication requirement which must be met before the rule applies. *HSBC Mtge. Servs., Inc. v. Edmon,* 6th Dist. Erie No. E-11-046, 2012-Ohio-4990, ¶22; *State v. Hirtzinger*, 124 Ohio App.3d 40, 49, 705 N.E.2d 395 (2d Dist.1997). "[T]he testifying witness must possess a working knowledge of the specific record-keeping system that produced the document * * * [and] 'be able to vouch from personal knowledge of the record-keeping system that such records were kept in the regular course of business.'" *State v. Davis*, 62 Ohio St.3d 326, 343, 581 N.E.2d 1362 (1991), quoting *Dell Publishing Co., Inc. v. Whedon*, 577 F.Supp. 1459, 1464 (S.D.N.Y.1984), fn. 5. Generally, the business record exception requires that some person

testify as to the regularity and reliability of the business activity involved in the creation of the record. *Hirtzinger* at 49.

{¶ 15} With these standards in mind, we now turn to the affidavits upon which Ohio Receivables relied in support of its motion for summary judgment. The first affidavit was created by "a custodian of records" of Ohio Receivables, who was not identified by name or title in the affidavit and whose signature was illegible. The affiant stated that "he/she is competent to testify to the matters" contained in the affidavit, which were "true based on his/her personal knowledge gained from a review of business records kept under his/her care, custody and control, and reflect business transactions kept in the ordinary and regular course of business of [Ohio Receivables] or its predecessor(s) in interest." The affidavit further states that, based on a review of "those books and records," Williams was issued credit card number XXXXXXXXXXXX2114 by Chase or its predecessor in interest, that Williams used that card, and that he thereby became bound by its terms and conditions. Finally, the affidavit states that "affiant has reviewed the books and records of Plaintiff and the Terms and Conditions provided by Plaintiff's predecessor(s) in interest" and concluded from those "books and records" that Williams had an unpaid outstanding balance of $16,495.90.[1] Attached to this affidavit were a Bill of Sale from Chase to Global Credit, a redacted portion of a spreadsheet indicating that Williams's account was part of that sale, a Bill of Sale from Global Credit to Ohio Receivables, and a redacted portion of a spreadsheet indicating that Williams's account was part of that sale.

---

[1] This amount ostensibly represents the amount owed on the account at the time of the assignment, but, with the accumulation of interest, does not represent the total amount that Ohio Receivables sought to collect.

{¶ 16} A second affidavit was attached to Ohio Receivables's supplemental memorandum in support of its motion for summary judgment and was signed by Gabriel S. Cheek, who identified himself as a custodian of records at Ohio Receivables.[2] This affidavit provides more specific information about how documents were obtained from Chase and relied upon by Ohio Receivables. It stated that, after the sale of the credit card account, "it is in the regular practice of [Ohio Receivables] to * * * send subpoenas to original creditors requesting documentation in addition to that acquired" at the time of the purchase of the account and that, once these records are received, "they are incorporated into the business records of [Ohio Receivables] and relied upon by [Ohio Receivables] in conducting its day-to-day business." The following additional documents were attached to that affidavit: account statements from April 2005 through July 2008, a copy of the "cardmember agreement" for the account (a form document containing no identifying information specific to Williams), and copies of checks that were written in payment on the account.

{¶ 17} The trial court relied on both of the affidavits provided by Ohio Receivables and their supporting documents in granting summary judgment on the existence of an assignment to Ohio Receivables and on the amount of the debt. Although the court observed that Ohio Receivables was "extremely sloppy with respect to the first affidavit which is signed illegibly" and did not list the name of the affiant, it found "sufficient documentation," between the two affidavits, "to establish a sale of [Williams's] account by Chase to" Ohio Receivables.

{¶ 18} In our view, the documents attached to Ohio Receivables's affidavits were

---

[2] The signatures on the two affidavits are very similar, but we will not speculate about whether they are signed by the same person.

not properly authenticated and, as business records of a separate entity, were not properly considered in support of Ohio Receivables's motion for summary judgment. Although employees of Ohio Receivables were permitted to state, via affidavit or otherwise, that they had obtained these records in the course of the purchase, they could not attest to the facts that the contract documents between Williams and Chase reflected the terms of the credit card agreement, that the documents were made at or near the time that the account was opened by someone with knowledge of that transaction, or that the billing statements and spreadsheets were generated in the regular practice of Chase's business activity.

{¶ 19} It was not necessary that an employee or agent of Ohio Receivables possess personal knowledge of these facts, but it was necessary for Ohio Receivables to prove, by some means, that the documents on which Ohio Receivables sought to rely as its business records were first business records created and maintained by Chase in the course of its (Chase's) regularly conducted business.

{¶ 20} Ohio Receivables's affidavits stating that the documents were received by Chase as part of the series of purchases of the accounts were insufficient to prove this fact. It is beyond dispute that, if Chase had sought to collect against Williams directly, it would have been required to establish the admissibility of records like the ones offered into evidence by demonstrating that they were business records. We see no reason why its assignee should be held to a lesser standard. A contrary rule "would inappropriately provide litigants with a means of avoiding rules governing the admission of evidence such as hearsay." *United States v. Irvin*, 682 F.3d 1254, 1262 (10th Cir. 2012), citing *United States v. Samaniego*, 187 F.3d 1222, 1224 (10th Cir. 1999).

**{¶ 21}** We recognize that some courts have established a different rule for "adoptive business records," where records created by a third party, such as a predecessor in interest, have been incorporated into the business records of the assignee. *See, e.g., Ohio Receivables, L.L.C. v. Dallariva*, 10th Dist. Franklin No. 11AP-951, 2012-Ohio-3165, ¶ 21 (admitting records prepared by the creditor's predecessors-in-interest and attached to the affidavit of creditor's record custodian under "adoptive business records hearsay exception doctrine"). These cases conclude that Evid.R. 806(3) "permits exhibits to be admitted as business records of an entity even when the entity was not the maker of the records, so long as the other requirements of [Evid.R. 803(6)] are met and circumstances indicate the records are trustworthy," *Id*. at ¶ 20, citing *Shawnee Assocs., L.P. v. Shawnee Hills*, 5th Dist. No. 09–CAE–05 0051, 2010-Ohio-1183, ¶ 50, and that "[r]ecords need not be actually prepared by the business offering them if they are received, maintained, and relied upon in the ordinary course of business" and "incorporated into the business records of the testifying entity." *Id*. (Some internal citations omitted.) See, also, *State Farm Mut. Auto. Ins. Co. v. Anders*, 197 Ohio App.3d 22, 2012-Ohio-824, 965 N.E.2d 1056, ¶ 17-19 (10th Dist.) ("Numerous federal courts have addressed whether documents may be admitted as business records of an entity other than the maker" and "have permitted admission of documents incorporated into a business's records, although prepared by third parties," rejecting "the 'anachronistic rule' that once required foundational testimony to be given by the preparer of a business record.").

**{¶ 22}** *Anders'* reference to an "anachronistic rule" cites *United States v. Irvin*, 656 F.3d 1151 (10th Cir. 2011), which was superseded on rehearing by *United States v. Irvin*, 682 F.3d 1254 (10th Cir. 2012). This case dealt with boxes of "loan files" which pertained to allegedly fraudulent home sales. Although the government in *Irvin* sought to admit a

summary of the loan files under Evid.R. 1006, we see no meaningful evidentiary distinction between an Evid.R. 1006 summary and the 50-page spreadsheet reflecting the accounts sold by Chase to Global and then to Ohio Receivables and from which Ohio Receivables sought to parse out Williams's account. The documents summarized must themselves be admissible. *Id.* at 1261-1262. The admission of the summary in *Irvin* was found to be error.

{¶ 23} Although the trial court did not expressly utilize the adoptive business record exception, its rationale suggests such an approach, because it allowed Ohio Receivables to rely on Chase's records without evidence surrounding the circumstances of their creation by Chase, noting only that personal knowledge of the transaction by Ohio Receivables's employees was "obviously" impossible due to the assignment. The trial court did not address, however, the affidavits' failure to establish the hallmark characteristics of a business record: that the documents were kept in the course of a regularly conducted business activity, that a person with knowledge of the transaction(s) created the documents, and that the documents were made at or near the time of the transaction.

{¶ 24} We do not disagree with the trial court's narrow conclusion that employees or agents of Ohio Receivables were not required to have first-hand knowledge of the transaction at issue (i.e., no Ohio Receivables employee or agent was required to have first-hand knowledge of the creation of Williams's credit card account and the charges and payments thereon). We simply conclude that, in the absence of such knowledge, Ohio Receivables had to prove by some other means that the documents upon which it relied were business records of Chase and Global Credit, and that they were thereby entitled to fall within the exception to the hearsay rule for such

documents. Chase could have done this very simply by attaching an appropriate affidavit containing the information required by Evid.R. 803(6) to the list of accounts it sold to Global Credit.

{¶ 25} In its brief, Ohio Receivables contends that any shortcomings in the affidavits of Ohio Receivables were rectified when it submitted affidavits from agents of Chase and Global Credit, which were attached to its reply to Williams's memorandum in opposition to summary judgment. Williams objected to this filing on the basis that it was submitted "long after the briefing deadline" and suffered from the "same deficiencies" as the other affidavits. The trial court did not specifically address Williams's objection to this filing, and it did not refer to the attached affidavits in its decision granting summary judgment. We infer that the trial court did not consider these materials.[3]

{¶ 26} Moreover, we agree with Williams that the affidavit provided by Chase was insufficient to satisfy the business record exception. The affidavit, signed by Kimberlee Smith, stated that Smith was "authorized by Chase Bank USA, N.A. to make this affidavit," but it did not include any description of Smith's role within Chase. She does not claim to be a custodian of records or to have personal knowledge of transactions or of the record-keeping related to the transactions; her knowledge, like the Ohio Receivables's affiant's knowledge, was based on a "review of Chase's records."

{¶ 27} Underneath her signature, Smith is identified as "Attorney-in-Fact." Ohio Receivables asserts that this designation makes an "inference of personal knowledge of the facts *

---

[3]Civ.R. 56 does not permit a party to obtain summary judgment "by ambush," i.e., by introducing new arguments and evidence for the first time in a reply brief. *HSBC Bank USA v. Beirne*, 9th Dist. Medina No. 10CA0113-M, 2012-Ohio-1386, ¶ 18.

* * eminently reasonable." We disagree. Without more specific information, the authority or knowledge of a person designated as an "attorney-in-fact" is not readily apparent. We find this designation analogous to the affidavit presented by a "Team Leader" in *TPI Asset Mgt., L.L.C. v. Conrad-Eiford*, 193 Ohio App.3d 38, 2011-Ohio-1405, 950 N.E.2d 1018 (2d Dist.). In that case, the "team leader" stated that he was authorized to make an affidavit on behalf of Chase Bank and detailed facts related to an account. We held that the affiant's assertion that he was authorized to make the affidavit was "insufficient to demonstrate any personal knowledge of the facts that the affidavit contain[ed]" and that the title of "team leader," standing alone, "fail[ed] to portray a basis to find that through that position he gained the required personal knowledge." Smith's affidavit, signed as an attorney-in-fact "authorized by Chase * * * to make th[e] affidavit," was likewise inadequate.

{¶ 28} Finally, Ohio Receivables argues that the Chase records were admissible as business records because Ohio Receivables incorporated and relied on them in its own business dealings. It cites *Air Land Forwarders, Inc. v. United States*, 172 F.3d 1338 (C.A.Fed. 1999) in support of this proposition, but we note that *Air Land Forwarders'* reliance on documents from a third party was coupled with other "circumstances indicating the trustworthiness of the document."

{¶ 29} *Air Land Forwarders* held that repair estimates produced by third parties, which were submitted by military service members in support of their claims for loss and damage to property, were "business records" of the military within the exception to the hearsay rule. The court required proof that the business incorporating the third-party records relied on the accuracy of the documents *and* that there were other circumstances indicating the trustworthiness of the

documents, i.e., the fact that military service members could be fined or imprisoned for submitting false claims, among other factors. We have no such circumstances in this case. Furthermore, although Ohio Receivables argues that it has incorporated and relied on Chase's and Global Credit's documents in its business endeavors, its business endeavor is merely to collect on the debt, not to receive or process payments, send bills, record charges, and the like. In other words, it does not appear that Ohio Receivables does, in fact, rely on these records in its business, except to the extent that it uses them as a basis for this and other lawsuits.

{¶ 30} For the foregoing reasons, we conclude that the trial court erred in concluding that Chase's and Global Credit's alleged business records were properly considered under Civ.R. 56 as Ohio Receivables's business records and in granting summary judgment in favor of Ohio Receivables.

{¶ 31} The assignment of error is sustained.

{¶ 32} The judgment of the trial court will be reversed, and the case will be remanded to the trial court for further proceedings consistent with this opinion.

. . . . . . . . . .

FAIN, P.J., concurs.

HALL, J., concurring:

{¶ 33} I would adopt the reasoning of the 10th District, reflected in *State Farm Mut. Auto. Ins. Co. v. Anders*, 197 Ohio App.3d 22, 2012-Ohio-824, 965 N.E.2d 1056, that documents that have been incorporated into a business's records, although prepared by a third party, can be qualified as business records provided they don't contain inadmissible opinion, or secondary hearsay, or are otherwise untrustworthy. Nevertheless, I agree with the lead opinion that the

records here were not adopted by the plaintiff as their records except to the extent that they used them as a basis to pursue this litigation.   Accordingly, I concur.

. . . . . . . . . .


Copies mailed to:

Ronald J. Kozar
Jackson T. Moyer
Nicholas J. Cheek
Hon. Barbara P. Gorman